# CHESAPEAKE AND OHIO RAILWAY COMPANY *v.* CONLEY, ATTORNEY GENERAL OF THE STATE OF WEST VIRGINIA.

ERROR TO THE SUPREME COURT OF APPEALS OF THE
STATE OF WEST VIRGINIA.

No. 111.  Argued April 8, 1912.—Decided June 16, 1913.

Where the state court has held that the carrier is exempted from the operation of the penalty clause of a rate-making statute during prosecution by it in good faith of a suit to determine the constitutionality of such statute, the carrier cannot attack the validity of the statute on the ground of its penal provisions.

Classification in a rate-making statute of railroads less than fifty miles in length is not unreasonable and does not render the statute unconstitutional as violating the equal protection provision of the Fourteenth Amendment. *Dow* v. *Beidelman*, 125 U. S. 680.

As construed by the state court, the statute of West Virginia of 1907 is not unconstitutional because the classification of railroads under fifty miles in length only applies to such roads as are not under the control, management or operation of other railroads.

A classification excepting electric lines and street railways from a rail-

road rate statute is reasonable and proper and does not offend the equal protection clause of the Fourteenth Amendment. *Omaha & Council Bluffs Railway Co.* v. *Int. Comm. Comm., ante,* p. 324.

*Minnesota Rate Cases, ante,* p. 352, followed to effect that a state statute prescribing rates exclusively for intrastate traffic is within the power of the State to enact.

The facts, which involve the constitutionality of the two cent rate act of West Virginia of 1907, are stated in the opinion.

*Mr. F. B. Enslow,* with whom *Mr. H. Fitzpatrick, Mr. H. T. Wickham* and *Mr. W. E. Chilton* were on the brief, for plaintiff in error:

The West Virginia two-cent fare statute is unconstitutional because the penalties pronounced by the statute against any railway which shall fail to comply with the same are so excessive as to bring the act within the inhibition of Art. VIII of the Constitution; and, under the Fourteenth Amendment, the act deprives the plaintiff of its property without due process of law, and denies to it the equal protection of the law.

The entire act is unconstitutional, because the classification thereby made of the railways makes the act applicable to railroads of a certain class, and such classification as set out is unfair and unjust, and a mere arbitrary selection imposed by the legislature without any relation to the alleged purpose of the act and not based on any reasonable grounds.

The act is also unconstitutional because it necessarily imposes a burden upon the plaintiff as an interstate carrier, and denies it the right to transact and carry on interstate commerce free from the burdens and restrictions imposed by the West Virginia two-cent fare act.

The act is unconstitutional by reason of the classification by length of roads. Many States afflicted with the "two-cent fare fad of 1907" passed such statutes in 1907;

but every statute has general application, makes no discriminations, treats every railroad alike; and in the few cases where classifications are made, those classifications are founded upon a good reason, every road in each class is treated as are all others in that class, and there is no difficulty in assigning a railroad to its proper class from a physical examination of its property.

Alabama has a straight 2½¢ rate, and has not an exception in it. General Acts Ala. 1907, p. 104. Illinois has a straight two-cent rate, without an exception in it. Laws of Ill. 1907, p. 476. Pennsylvania has a straight two-cent rate, without an exception. Laws of Penn. 1907, p. 59. North Carolina has a straight 2¼¢ act which has the proviso that the Corporation Commission is authorized to permit "all independently owned and operated railroad companies in North Carolina, whose mileage of road in said State is sixty (60) miles or under, to charge a rate for transporting passengers not in excess of the present rate fixed and prescribed for said road." Public Laws of Nor. Car. Session 1907, c. 216, p. 250.

Iowa classifies railroads according to gross earnings per mile without any exception whatever with rates from 2¢ to 3¢. Laws of Iowa, 1907, c. 102.

Minnesota has a straight 2¢ rate with a half rate for children under 12 years of age. Laws of Minn. 1907, c. 97, p. 109.

Missouri divides railroads into four classes, to-wit: A, B, C and D, of which D includes all roads less than 45 miles in length, not owned, leased, controlled or occupied by any trunk line company or corporation. This classification includes and embraces every class of railroad in the State, and there is no chance, by construction or otherwise, to put one short railroad in one class to-day and in another to-morrow. The rate is fixed at 2¢ per mile for classes A, B and C; and at 4¢ per mile for class D. Laws of Mo. 1907, p. 171.

Nebraska has a straight 2¢ fare law applying to all railroads without exception. Laws of Neb. 1907, c. 92, p. 341.

North Dakota has a straight 2½¢ rate for distances exceeding six miles with a reduced rate for children, the only exception being that the act "shall not apply to the transportation of passengers within the boundaries of any city by street railways." Laws of N. D. 1907, c. 199, p. 327.

Ohio has a straight 2¢ per mile rate without any exception whatever. Laws of Ohio, 1906, p. 4.

South Carolina has a straight rate of 3¢. Laws of So. Car., 1902, § 2165. This act was subsequently amended by the single proviso that any railroad not over 5 miles in length may be permitted by the Railroad Commission to charge 5¢ per mile. See Acts of So. Car., 1908, No. 469, p. 1047.

South Dakota has a straight 2¢ rate without a single exception. Sess. Laws of So. Dak., 1909, c. 6, p. 8.

The act of West Virginia makes an unreasonable, arbitrary, unjust and totally indefensible classification of railroads, or it so exempts certain railroads as to make it repugnant to the rules laid down by this court. More, it is a classification which is one thing in one part of the statute and another thing in another part.

A railroad under fifty miles in length is excepted, provided it be not a part of, or under the control, management or operation of any other railroad over fifty miles in length. If a railroad should be exactly fifty miles in length it is in a peculiar situation.

An assessment, no matter how made, which adopts a different method and fixes a different rate for certain corporations which results in enormous disparity and discrimination denies equal protection of the laws. *Raymond* v. *Chicago Un. Traction Co.*, 207 U. S. 20.

While the State can classify, and may make a difference in classes, the basis upon which any classification is made is always subject to review by the courts. *Nicholas* v.

*Walter*, 37 Minnesota, 264; *Bluejacket* v. *Scherr*, 50 W. Va. 533; *Missouri* v. *Lewis*, 101 U. S. 22.

The Fourteenth Amendment requires the same means and methods to be applied impartially to all the constituents of a class, so that the law shall operate equally and uniformly upon all persons in similar circumstances. *Brannon*, 323; *Kentucky R. R. Tax Cases*, 115 U. S. 321; *Home Ins. Co.* v. *New York*, 134 U. S. 594; *Atchison* v. *Mathews*, 174 U. S. 105; *State* v. *Broodbelt*, 89 Maryland, 565; *New York* v. *Clearing House*, 179 U. S. 287; *Am. Sugar Co.* v. *Louisiana*, 179 U. S. 89; *Railway* v. *Mackey*, 127 U. S. 205; *Pembina* v. *Pennsylvania*, 125 U. S. 188.

Recognizing the right of classification of industries and occupations, it must nevertheless always be remembered that the equal protection of the laws is guaranteed, and that such equal protection is denied when upon one of two parties engaged in the same kind of business and under the same conditions burdens are cast which are not cast upon the other. *Richards* v. *Harmon*, 42 N. J. L. 435; *Cotting* v. *Kansas City Stock Yards Co.*, 183 U. S. 85; *Fertig* v. *Patton*, 88 Pa. St. 258; *Edmondson* v. *Herbrandson*, 14 L. R. A. 725; *State ex rel.* v. *Mitchell*, 31 Oh. St. 592; *People* v. *Chatauqua*, 43 N. Y. 10; *Smith* v. *L. & N. R. R.*, 75 Alabama, 449; *State ex rel.* v. *Ramsey Co.*, 48 Minnesota, 236.

The classification is based not only on length but also on control and management, and this renders it a denial of equal protection of the law.

*Dow* v. *Beidelman*, 125 U. S. 180, distinguished. And see Cooley, Con. Lim., 5th ed., 484; *State* v. *Haun*, 61 Kansas, 146; *Railway Co.* v. *Medaris*, 60 Kansas, 155; *Levalle* v. *Railroad*, 40 Minnesota, 249; *Deppe* v. *Railway Co.*, 36 Iowa, 55; *Ballard* v. *Cotton Oil Co.*, 81 Mississippi, 507; *Bedford Quarries Co.* v. *Bough*, 80 N. E. Rep. 529.

An exception to the statute cannot take one business and favor it when other corporations and other individ-

uals, doing the same kind of business. are not so favored, nor can the statute permit a small corporation to engage in the same business with a larger corporation, the latter having burdens which the former has not, or the former having privileges which the latter has not. *Connolly v. Sewer Pipe Co.*, 184 U. S. 558; *State v. Petroleum Co.*, 58 W. Va. 109; *Re Grice,* 79 Fed. Rep. 628; *Cutting v. Kansas City Stock Yards Co.*, 183 U. S. 85.

A state railroad statute which imposes such excessive penalties that the parties affected are deterred from testing its validity in the courts, denies the carrier the equal protection of the law, without regard to the question of insufficiency of the rates prescribed. *Ex parte Young*, 209 U. S. 123; *Willcox v. Consol. Gas Co.*, 212 U. S. 19.

While the length of the road may furnish in some instances a proper basis for classification, such classification must be called for by facts justifying it, and if it has the effect of denying equal protection to parties engaged in the same kind of business, and is so worded that it applies to some corporations in the class, and excludes others, it is invalid. *Kentucky R. R. Tax Cases*, 115 U. S. 321; *Cotting v. Kansas City Stock Yards*, 183 U. S. 79; *St. Louis Coal Co. v. Illinois*, 185 U. S. 203; *Louis. & Nash. R. R. Co. v. Melton*, 218 U. S. 36; *Mo., Kans. & Tex. Ry. Co. v. May*, 194 U. S. 267; *Ozan Lumber Co. v. Union National Bank*, 207 U. S. 251; *McLean v. Arkansas*, 211 U. S. 539; *N. Y., N. H. & H. R. R. Co. v. New York*, 165 U. S. 628; *Chi., R. I. & Pac. Ry. Co. v. Arkansas*, 219 U. S. 453, distinguished; *Heath & Milligan Mfg. Co. v. Worst*, 207 U. S. 338; *Engel v. O'Malley*, 219 U. S. 128, are all inapplicable to this case.

The Two-Cent Fare Act of West Virginia imposes burdens and restrictions upon interstate commerce, and is for that reason also invalid.

Congress having, under authority of the Constitution, prescribed rates and regulations governing the charges of interstate carriers, no State can impose burdens upon or

enact statutes that actually do conflict with and nullify the regulations of the Interstate Commerce Commission. *Hall* v. *DeCuir,* 95 U. S. 489; *Gulf, Colo. & Santa Fe Ry. Co.* v. *Hefley,* 158 U. S. 99; *Wabash &c. Ry.* v. *Illinois,* 118 U. S. 557; *Cleveland &c. Ry.* v. *Illinois,* 177 U. S. 514; *Employers' Liability Cases,* 207 U. S. 463.

The statute, by reason of the extreme penalties pronounced, is in violation of the constitution of West Virginia.

It makes a distinction that should not be upheld; and no case passed upon by this court has ever sustained such an arbitrary statute as the one in question.

It is a clear effort on the part of the legislature of West Virginia to make the statute applicable to the trunk lines engaged in interstate commerce, and thereby affect and control the rates published and approved under the regulation of the Interstate Commerce Commission.

*Mr. William G. Conley,* Attorney General of West Virginia, for defendants in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

This suit was brought by the Chesapeake & Ohio Railway Company in the Circuit Court for Kanawha County, West Virginia, against William G. Conley, Attorney General of the State of West Virginia, and the prosecuting attorneys of several counties in the State, to enjoin the enforcement of the act of the legislature of West Virginia passed February 24, 1907 (Acts, 1907, chapter 41, p. 226), fixing the maximum fare for passengers on railroads, as described, at two cents a mile.

The state court sustained the act and this writ of error is brought.

The act provides:

"SEC. 1. That all railroad corporations organized or

doing business in this state under the laws or authority thereof shall be limited in their charges for the transportation of any person with ordinary baggage, not exceeding one hundred pounds in weight, to the sum of two cents per mile, or fractional part of a mile, but the fare shall always be made the multiple of five nearest reached by multiplying the rate by the distance, and if for any one passenger the rates herein provided shall be less than five cents, the said sum of five cents may be charged as a minimum; children under twelve years of age shall be carried for one-half fare above prescribed; *provided*, that any passenger boarding a train at a station where tickets are sold, without having procured a ticket, may be charged an additional fare of ten cents, for which sum a rebate slip, redeemable in money, upon presentation to any ticket agent of the company, shall be issued and delivered to such passenger; and *provided, further*, that nothing in this act shall apply to any railroad in this state under fifty miles in length and not a part of, or under the control, management or operation of any other railroad, over fifty miles in length, operated wholly or in part in the state.

"SEC. 2. Any railroad company which shall charge, demand or receive any greater compensation for the transportation of any passenger than is authorized by this act, shall be fined for each offence not less than fifty dollars nor more than five hundred dollars; *provided*, that nothing contained in this act shall apply to electric lines and street railways owned or operated in this state."

The questions presented are thus stated by the plaintiff in error:

"First: The statute in question is unconstitutional because of the fact that the penalties pronounced by the statute against any railway which shall fail to comply with the same, are so excessive as to bring the act within the inhibition of Article Eight of the Constitution of the

United States, and under the Fourteenth Amendment to the Constitution of the United States deprives the plaintiff of its property without due process of law, and denies to it the equal protection of the law.

"Second: The entire act is unconstitutional, because the classification thereby made of the railways makes the act applicable to certain railroads of a certain class, and such classification as set out is unfair and unjust, and a mere arbitrary selection imposed by the Legislature without any relation to the alleged purpose of the act, and not based on any reasonable grounds.

"Third: Because the act necessarily imposes a burden upon the plaintiff as an interstate carrier, and denies it the right to transact and carry on interstate commerce free from the burdens and restrictions imposed by the West Virginia two cent rate act."

While the plaintiff in error was entitled to a fair opportunity to test the constitutional validity of the prescribed rate, and penal provisions operating to preclude such an opportunity would be invalid (*Ex parte Young*, 209 U. S. 123), it is clear that the provisions for penalties of the statute in question, aside from their separable character, are not open to this objection, in the light of the construction placed upon them by the state court. In construing the act, the Supreme Court of Appeals of West Virginia held:

"By the institution of a suit to determine whether such a statute is confiscatory in its operation in a particular case, such corporation alters its status from that of a mere corporation engaged in the public service, to that of a contestant of the legislative claim of right to take its property without due process of law; and, in the absence of expression of intent to the contrary, it is presumed the legislature did not intend to affect, or interfere with, the assumption or maintenance of such status, nor to legislate upon the subject of such remedy; and the penal clause of

such a statute, silent on the subject of remedy, has no application, while suit is pending, in good faith, for the determination of such question. . . . By the application of these rules and principles, a railroad company is excepted from the operation of the penalty clause of chapter 41 of the Acts of 1907, during the prosecution by it, in good faith, of a suit to determine whether said statute is confiscatory in its operation and effect, as applied to such company." *Coal & Coke Railway Co.* v. *Conley and Avis,* 67 W. Va. 129, 133, 134.

Under this ruling, it does not appear that the company is in a position to attack the validity of the act by reason of its penal provisions. It has had its opportunity in court, and if the act be otherwise valid it may avoid penalties hereafter by complying with it. Further, as was said in *Western Union Telegraph Co.* v. *Richmond,* 224 U. S. 160, 172: "If an oppressive application of them should be attempted, it will be time enough then for the appellant to file its bill."

Nor can it be said that the classification of the act is an unreasonable or arbitrary one. In *Dow* v. *Beidelman,* 125 U. S. 680, the statute under consideration classified railroads with respect to passenger fares, as follows: "On lines of railroad fifteen miles or less in length, eight cents per mile. On lines over fifteen miles in length, and less than seventy-five miles in length, five cents. On lines over seventy-five miles in length, three cents per mile." The court in sustaining the statute said: "The legislature, in the exercise of its power of regulating fares and freights, may classify the railroads according to the amount of the business which they have done or appear likely to do. Whether the classification shall be according to the amount of passengers and freight carried, or of gross or net earnings, during a previous year, or according to the simpler and more constant test of the length of the line of the railroad, is a matter within the discretion of the

legislature. If the same rule is applied to all railroads of the same class, there is no violation of the constitutional provision securing to all the equal protection of the laws." (p. 691.)

Again, in *Chicago, Rock Island & Pacific Railway Co. v. Arkansas,* 219 U. S. 453, the court sustained the statute of that State, which, in providing for the number of men to be employed in the operation of freight trains, excluded from its application railroads less than fifty miles in length. The principles governing the decision of a question of this sort have been so frequently stated that repetition is unnecessary. *Magoun* v. *Illinois T. & S. Bank,* 170 U. S. 283, 294; *Louisville & Nashville R. R. Co.* v. *Melton,* 218 U. S. 36, 52–55; *Engel* v. *O'Malley,* 219 U. S. 128; *Lindsley* v. *Natural Carbonic Gas Company,* 220 U. S. 61, 78; *Mutual Loan Co.* v. *Martel,* 222 U. S. 225, 232; *Chicago Dock* v. *Fraley,* 228 U. S. 680.

It is urged, however, that "control, management or operation" is made the basis of classification for rate purposes, so that, if a railroad under fifty miles in length be controlled by a railroad of greater length, it would be taken out of the exception although operated wholly independently and not in connection with the longer line. This contention is fully met by the construction which the state court has given to the statute. Upon this point that court said that the meaning of the words "under the control, management or operation" "is to be ascertained from the connection in which they are used, the act in which they are found, its context, and the mass of legislation of which they form a part. In form, the expressions are alternative, but, in meaning, they are appositive, signifying the same as the words 'part of.' . . . The suggestion that ownership or control of one railroad by another, when they are not connected and operated together, nor susceptible of such connection and operation, makes them one within the meaning of the act, is liks

wise contrary to the spirit and beyond the scope thereof. Such an interpretation is not within its reason or purpose, and, therefore, not within its meaning. The legislature must be regarded as having passed the act, in view of existing conditions and methods of railroad operation, and with the intent that it should operate in harmony with the spirit and general principles of existing railroad rate legislation, except in so far as the contrary is expressed in terms or by necessary implication. There is not a word here signifying any intent to depart from the general principle embodied in the act of 1873, concerning the entity of a railroad for the purposes of the act. It made into one only such railroads as were operated 'in connection' with one another. Intent to change this settled policy must rest upon something more, in an amendatory act, than mere inference, surmise or unnecessary implication." *Coal & Coke Railway Co.* v. *Conley and Avis*, 67 W. Va. 129, 177, 178, 179.

The exception of "electric lines and street railways" is also made the ground of criticism, but this classification rests upon reasonable and familiar distinctions, long recognized as proper in railroad legislation. *Omaha & Council Bluffs Street Railway Co.* v. *Interstate Commerce Commission, ante,* p. 324.

The final objection to the statute is that it constitutes an unconstitutional interference with interstate commerce. It must be regarded, however, as prescribing rates exclusively for intrastate traffic, and, as thus construed, it was within the power of the State to enact. The questions presented are substantially the same as those which were considered in the *Minnesota Rate Cases, ante,* p. 352.

*Judgment affirmed.*