STATE OF IOWA ex rel. WOODBURY COUNTY ANTI-SALOON
LEAGUE, Appellant, v. EVALINE ROSS
et al., Appellees.

**APPEAL AND ERROR:** Reservation of Grounds—Necessity—Consti-
tutional Law. · The constitutional question as to the power of the
court to impose a $300 tax on premises, under Sec. 4944-h8, Code
Suppl. Supp., 1915, cannot be considered on appeal, where no
such question was raised by the pleadings or passed upon by the
trial court.

**NUISANCE:** Lewdness—Statute—Notice—Evidence.   Evidence re-
viewed, in a suit, under Sec. 4944-h3, Code Suppl. Supp., 1915, to
enjoin a nuisance in maintaining a place used for the pur-
pose of lewdness, and asking the imposition of a $300 tax on
the real property on which it was maintained, and *held* that
the owner of said property was charged with notice and knowl-
edge that a nuisance was being maintained upon his property.

**NUISANCE:** Lewdness—Competency of Evidence—''General Reputa-
tion.''   In a suit to enjoin the maintenance of a place for lewd-
ness, under Sec. 4944-h3, Code Suppl. Supp., 1915, evidence of
its general reputation is competent for the purpose of prov-
ing the existence of said nuisance, and is prima-facie evidence
of such a nuisance and of knowledge, acquiescence, and partici-
pation therein on the part of the property owner.

**NUISANCE:** Lewdness—Imposition of Tax Mandatory.   The pro-
vision of Sec. 4944-h8, Code Suppl. Supp., 1915, for the impo-
sition of a tax of $300 against the building and the ground upon
which a nuisance is maintained, is mandatory; and where such
a nuisance is being maintained, and the owner had knowledge
thereof, the court should impose the tax required by law.

*Appeal from Woodbury District Court.*—GEORGE JEPSON,
Judge.

JULY 2, 1919.

ACTION in equity to enjoin a nuisance alleged to have
been maintained by defendants other than Merkin, in main-
taining in the building in question a place used for purposes

of lewdness, assignation, and prostitution, and asking that a $300 tax be imposed upon the real property. After a trial on the merits, the trial court found for the plaintiff as against the defendant Ross, and she was enjoined, as prayed, and the decree ordered a sale of the fixtures, furniture, musical instruments, etc., and that the building be closed and kept closed for one year. The trial court refused the injunction as to the defendant Merkin, on the ground that the nuisance was without his knowledge or consent, and refused to impose the $300 tax. None of the defendants have appealed, and Merkin is the only appellee. The plaintiff appeals from so much of the decree as was against it.— *Reversed.*

*John F. Joseph,* for appellant.

*Henderson, Fribourg & Hatfield,* for appellees.

PRESTON, J.—1. Certain constitutional questions as to the power to impose the $300 tax are argued, but no such question was pleaded in the district court, and so far as the record shows, such questions were not presented to nor passed upon by the trial judge. As before stated, the trial judge based his decision on other grounds. Even the arguments do not point out whether it is the state or Federal Constitution that has been violated, nor the particular provisions thereof. *State v. Wilson,* 124 Iowa 264; *Hopson v. Murphy,* 1 Tex. 314; *Case & Co. v. Illinois Cent. R. Co.,* 184 Iowa 98. In *C. C. Taft Co. v. Alber,* 185 Iowa 1069, we passed upon the constitutionality of the statute in regard to imposing a $300 tax or penalty upon property where cigarettes were sold, which may have some bearing, although perhaps the precise questions were not all passed upon in that case that are sought to be argued in this case. That case was decided at about the time, or

1. APPEAL AND ERROR: reservation of grounds: necessity: constitutional law.

not long before, the instant case was submitted, and is not cited by either party.

2. The appellee at first answered by general denial, and, five or six months thereafter, and the day before the trial, answered further, denying that Evaline Ross occupied the premises as his tenant; and the question seems to have been contested in the trial in the district court by this appellee as to whether she or some other person or persons were in the occupancy of the premises. The trial court found for the plaintiff on that question, and entered an injunction against Evaline Ross, and from such finding neither she nor the owner, Merkin, has appealed, nor does Merkin complain of the decree ordering his building closed for a year. The question as to the sufficiency of the evidence to sustain such finding is argued. There is a conflict in the testimony on this point, but, under the circumstances, we do not feel called upon to set out the testimony. From a reading of it, we are satisfied with the finding of the trial court, on this proposition.

*2. NUISANCE: lewdness: statute: notice: evidence.*

3. Whether the owner, Merkin, had notice or knowledge of the character of the premises kept by Evaline Ross, is disputed. Merkin himself, the party against whom it is sought to impose the tax upon his property, testifies that he did not have such knowledge. Without attempting to set out all the evidence, enough will be referred to to show that the trial court was in error as to this feature of the case.

The petition was filed June 8, 1917, and the trial took place February 20, 1918. Witness McMillan testifies that he was going by the house, May 24, 1917, and was solicited by the two women, Ross and Taylor, one being at the window and the other at the door, and they both asked him if he wanted to come in and go to bed with them, and stated what they would charge. Later in the same

*3. NUISANCE: lewdness: competency of evidence: "general reputation."*

day, he went back with a patrolman, at which time the two women and a man named Kline were arrested. Kline was partly undressed, and the woman Taylor had on only a suit of underclothes, and the other girl, only a house apron. He states that the general reputation of the place was that it was a place where prostitution, assignation, and lewdness were carried on; that, at the time of the trial, a girl by the name of Franklin was there, and running the place, and that she solicited the witness, the same afternoon, at a house farther up the street; that the Franklin girl and another girl were in the house a few days before the trial. Police officer White testifies that he had caught the girls, several times, tapping on the window at the place in question; and that he went in and warned them about it, but it did no good; and that he reported them, and that they went down and raided the place, the same day that McMillan was there. He says the place was vacant at the time of the trial, and the occupant Franklin moved out two days before the trial; that the Franklin woman is a prostitute; that she is a colored girl. Witness thinks the women Ross and Taylor vacated in September; that he served notice on them, and it was about three days after that when they moved out; that he is acquainted with the general reputation of the place in question; and that, about May 24, 1917, and prior and subsequent thereto, such reputation was that it was a place where assignation, lewdness, and prostitution were allowed and carried on. Police officer Young testifies that, about June 1st, the premises in question had the general reputation of being such a place as testified to by the others; that the Franklin woman was occupying it, the Thursday before the trial; and that she was a prostitute. It is shown that the premises in question are at 407 Lafayette Street, in Sioux City. Defendant testifies that he owns the property in question, and that he lives at 711 East Seventh Street; that he was not around the premises in

question every day; that he rented the property to Mrs.
Abdosh, and did not know that the Ross woman and the
Taylor woman occupied the premises; and that he never
rented it to them; that he never saw any colored people
there while Mrs. Abdosh and children lived there; that he
did not know that these two colored women lived there;
that Mrs. Abdosh lived on the property since he bought it,
four years ago; and that she lived there on May 24th, but
he was not there to see; that Pearl Berry moved in, about
June 1st; that she lived there until she was arrested, and
then he made her move out; that he does not know Mabel
Franklin; that he rented it the 15th of February, 1918,
to Bill Terry, but did not know whether Terry had moved
in yet; and that then a colored woman by the name of
Hodgins had it; that he does not know what she does; that
he knows there was a raid there a few days before the trial,
but does not know whom they got—whether it was the Frank-
lin girl or not, because, as he says, "You see, there are so
many there;" that he does not know who put the people out
at the time the police made the raid, but that they were out
at the time of the trial. Joe Hill, a witness for defendant,
testifies as to the Abdosh family's living in the property at
the time claimed, but says he doesn't know how the time
was fixed when she moved out; that the only thing is, they
came to his store for groceries, and he sells them, and that's
all he remembers; does not know whether she was in there
in May or not, but on redirect examination, says she was.
There is other evidence as to the occupancy as claimed by
Merkin, but, in view of the finding of the trial court, it will
not be referred to further.

In rebuttal, the trial court admitted in evidence the
jail register, showing that the Taylor and Ross women were
arrested for soliciting on the streets, May 24th, at the place
described in the petition as the premises in controversy;
but admitted it to show their arrest, and the time; but was

of opinion that it was not competent to show the place.
Police officer O'Keefe testifies that he and others made the
raid at the premises in controversy, a few days before the
trial, and that he found the Franklin girl and another girl
there. Police officer Freelund testifies that he was in the
raid on the place in question, May 24, 1917, and that they
arrested two colored girls at the place; that he thinks
Evaline Ross was living in the place in November, 1917,
but is not certain. Officer White says that the Abdosh
people moved out in April, and that, since they moved out,
the Taylor and Ross women moved in, and that there have
only been colored prostitutes there since. The record does
not show how far Merkin's place of residence is from the
property in controversy.

Under this record, we are of opinion that Merkin
should have had, and, under the law, will be held to have
had, notice and knowledge that a nuisance was being main-
tained in his property. Under the findings of the trial court,
and under the evidence, the property was occupied by the
Ross and Taylor girls, after the Abdosh family moved out,
about April, 1917. They occupied it for a considerable
length of time,—according to some of the testimony, from
some time in April to November, 1917, which was both be-
fore and after this suit was brought. Without any serious
dispute, if, indeed, there is any dispute, other colored pros-
titutes were living in the house after the suit was brought,
and up until within a day or two of the trial of this case.
The property had the general reputation of being a nui-
sance, as alleged. Section 4944-h3, Supplemental Supple-
ment to the Code, 1915, provides that evidence of the gen-
eral reputation of the place shall be competent for the pur-
pose of proving the existence of said nuisance, and shall be
prima-facie evidence of such nuisance, and of knowledge
thereof, and of acquiescence and participation therein on
the part of the owner, etc. The owner, Merkin, lived in the

same city. Merkin certainly has some duty in regard to knowing about the character of the people who occupy his premises, a duty not only to himself, but to the public. He seems to have been utterly indifferent in the matter, if, indeed, not winking at the violation of the law in his property. There should have been a permanent injunction against him, as prayed, with costs.

4. Section 4944-h8, Supplemental Supplement to the Code, 1915, provides, substantially, that, whenever a permanent injunction against any person for maintaining a nuisance is issued, as defined, or against any owner, etc., there shall be imposed upon said building and the ground upon which the same is located, and against the person or persons maintaining said nuisance, and the owner, etc., a tax of $300, and that the imposing of said tax shall be made by the court, as a part of the proceedings. The statute is mandatory. It appearing that the nuisance was maintained, as alleged, and that the owner, Merkin, had knowledge thereof, the court should have imposed the tax, as provided and required by the statute. The cause is reversed and remanded, with directions to render a permanent injunction against Merkin, and a judgment against him for costs, and that the tax be imposed against the property and Merkin, the owner; or the plaintiff may have such a decree in this court by presenting it in the proper form, with notice thereof to appellee Merkin.—*Reversed.*

4. NUISANCE: lewdness: imposition of tax mandatory.