II. G. PEVERILL, Appellee, v. BOARD OF SUPERVISORS OF BLACK
HAWK COUNTY et al., Appellants.

CONSTITUTIONAL LAW:    Procedure  to  Test  Constitutionality—
1  Pleadings Required.  A pleading assailing the constitutionality of
a statute must (1) point out specifically the clause or section of
the Constitution which it is claimed is violated, and (2) designate
the specific grounds upon which the asserted violation is based.

CONSTITUTIONAL LAW:    Due Process—Hearing and Notice Unnec-
2  essary.  A statute for the eradication of bovine tuberculosis (Ch.
48, Acts 40 G. A.) which provides (1) for the filing with the board
of supervisors of a petition of ''51 per cent of the owners of breed-
ing cattle within the county'' as a basis for the designation of
the county as a ''county testing unit,'' and (2) for the forwarding
by the board of said petition to the commission of animal health
for action thereon, is not unconstitutional because it *wholly fails to
provide for any hearing and notice thereof* before the board on the
sufficiency of the said petition, when the statute demonstrates that
no one can be affected except those who have signed the petition.

CONSTITUTIONAL LAW:  Impairment of Contracts—Noninjured Com-
3  plainant.  A party may not question the constitutionality of a stat-
ute when he fails to show that he has been or will be injured by
the statute.  In other words, he may not borrow an objection from
one who could complain, but does not complain.  So held where a
noninjured party predicated unconstitutionality upon the statute
which reduced the public compensation for animals slaughtered by
the state in the eradication of bovine tuberculosis.

CONSTITUTIONAL LAW:  Unconstitutional in Part—Effect.  An un-
4  constitutional amendment to a statute will not carry down the
entire legislative structure on the subject in question unless it is
*very manifest* that the legislature would have abrogated the entire
statute, had it foreseen the unconstitutionality of its amendment.

CONSTITUTIONAL LAW:    Legislative Department—Legalization  of
5  Illegal Acts.  When an act is done in a certain manner and under
certain conditions, but in violation of an existing statute, the
legislature may constitutionally validate the act when it might
constitutionally have originally ordered the act done in the manner
and under the conditions in which it was done.  So held as to an
act which validated the action of the secretary of agriculture in
enrolling a county under the accredited area plan for the eradication
of bovine tuberculosis, when it was doubtful whether the petitions
therefor contained the number of signatures required by statute.

**STATUTES:**    Construction—Nonmandatory Statutes.    The statutory command (Sec. 2696, Code of 1924) that the, county auditor shall, after each assessment in his county, certify to the secretary of agriculture the number of owners of breeding cattle in his county, for the purpose of enabling the said secretary to determine the numerical sufficiency of petitioners to agreements for the enrollment of the county under the accredited area plan for the eradication of bovine tuberculosis, *is directory only.*    (See Book of Anno., Vol. 1, Sec. 64, Anno. 18.)

**Headnote 1:**  12 C. J. p. 785.   **Headnote 2:**   3 C. J. p. 50 (Anno.)
**Headnote 3:**   12 C. J. pp. 760, 762.   **Headnote 4:**   36 Cyc. p. 1056.
**Headnote 5:**   12 C. J. p. 1091.   **Headnote 6:**   36 Cyc. p. 1158.

*Appeal from Black Hawk District Court.*—E. B. STILES, Judge.

OCTOBER 27, 1925.

REHEARING DENIED APRIL 9, 1926.

ACTION in equity, to enjoin the county auditor and the board of supervisors of Black Hawk County from publishing a certain notice made necessary by law for the enrollment of any county as an accredited area for the eradication of bovine tuberculosis.  A demurrer to the petition was overruled, and decree entered as prayed.  Defendants appeal.—*Reversed and remanded.*

*Ben J. Gibson,* Attorney-general, *Herbert A. Huff,* Assistant Attorney-general, and *A. G. Reid,* Assistant County Attorney, for appellants.

*Walter P. Jensen* and *E. H. McCoy,* for appellee.

STEVENS, J.—This action, which is prosecuted by a resident property owner of Black Hawk County, was instituted in equity, to enjoin appellants, who are respectively the members of the board of supervisors and county auditor of said county, from publishing the necessary notice for the enrollment of the county as an accredited area for the eradication of bovine tuberculosis.  The allegations of the petition deemed admitted by the demurrer filed thereto will be fully stated a little later.

Prior to the enactment of Chapter 23, Laws of the Extra Session of the Fortieth General Assembly, which supersedes all previous legislation on the subject, the law relating to the

eradication of bovine tuberculosis was contained in Chapter 287, Laws of the Thirty-eighth General Assembly, as amended and supplemented by Chapter 48, Laws of the Fortieth General Assembly (regular session). The portions of the above chapters necessary to a proper understanding and decision of this appeal are as follows:

Section 10, Chapter 287, Acts of the Thirty-eighth General Assembly: ''That owners of herds who desire to have their herds examined and tested with a view to detecting the presence of tuberculosis, and with a further view of freeing their herds from such disease, may apply to the commission for testing and examination. A blank for such application shall be furnished by the commission, and shall include such an agreement on the part of the person making the said application that he will conform to and abide by the rules and regulations laid down by said commission and follow the instructions of said· commission designated to prevent the reinfection of the herd and to suppress the disease or prevent the spread thereof. Upon receiving such application, or if· herds or animals are examined on the commission's own motion, the commission shall, as soon as practicable, cause such test or an examination to be made. If, after such an examination, tubercular animals are found therein, the said commission shall have authority to order such disposition of them as it considers most desirable and economical. Before being tested, such animals shall be appraised at their cash value for breeding, dairy or beef purposes by a representative of the commission or a representative of the United States bureau of animal industry, or both, together with the owner. If these cannot agree as to the amount of the appraisal, there shall be appointed three competent and disinterested men, one appointed by the commission, one by the owner, and the third by the first two, to appraise such animals, which appraisal shall be final. The expense of such appraisal shall be borne by the state. In the case of pure-bred cattle, the pedigree shall be proved by certificate of registry from the herd books where registered. If it is deemed advisable to slaughter an animal reacting to the tuberculin test, the owner shall be paid from the funds of the

state treasury not otherwise appropriated, a sum equal to one third of the difference between the proceeds from the sale of the salvage, which the owner receives, and the appraised breeding value of the animal, provided the state does not pay to the owner a sum in excess of $80 for any pure-bred animal and $40 for any grade. In all cases, it is provided the animal has been owned at least six months in the state by the applicant, prior to the condemnation thereof.''

Section 10-b, Chapter 48, Acts of the Fortieth General Assembly: ''Whenever a petition signed by 51 per cent of the owners of breeding cattle within the county, as shown by the assessor's reports, together with agreements as provided in Section 10 hereof, shall be presented to the board of supervisors, the board shall make application to the commission of animal health of the state for the enrollment of said county under the county area plan, and shall at the same time forward to the commission of animal health the agreements signed as provided herein. The commission of animal health shall, when it receives agreements signed by 51 per cent of the owners of breeding cattle within such county, designate such county as a county area testing unit, and it shall forthwith proceed with the eradication of bovine tuberculosis in such county under the county area plan as provided herein.''

Section 10-m, Chapter 48, Acts of the Fortieth General Assembly: ''Whenever 75 per cent of the owners of breeding cattle in any county operating under the county area plan shall have signed agreements with the commission of animal health, said commission shall notify the board of supervisors of such county of such fact, and such board of supervisors shall, at its next regular meeting, by resolution, declare such county's intention to become an accredited area, and it shall thereafter become the duty of every owner of breeding cattle within said county to cause his breeding cattle to be tested under the accredited area plan.''

The foregoing statutes were substantially re-enacted in Chapter 23, Laws of the Extra Session of the Fortieth General Assembly. Prior enactments made no provision for notice or a hearing before the board of supervisors of a petition of 51 per

cent of the owners of breeding cattle to have the county desig-
nated as a county testing unit, but the following was enacted as
a part of Section 20, Chapter 23, aforesaid:

"* * * the board shall cause a notice to be published for
two consecutive weeks in two official county papers of the date
of the hearing on said petition, which shall not be less than
five nor more than ten days after the last publication, said date
to be set by the county auditor. If, after such hearing, or if
no objections are filed to such petition on or before such date,
the petition shall be found sufficient, the board shall make appli-
cation to the secretary of agriculture for the enrollment of the
county under such plan. * * *"

No provision will be found in the present law for notice
of a hearing before the secretary of agriculture upon the appli-
cation of 75 per cent of the owners of breeding cattle for the
enrollment of a county as an accredited area. Reference is
made above to both the commission of animal health and the
secretary of agriculture. To avoid confusion in the use of
these terms, it should be explained that the commission of ani-
mal health, embracing all its administration agencies previously
under its control, was consolidated with the department of agri-
culture, which was created by Chapter 46, Laws of the Fortieth
General Assembly. This enactment also created the office of
secretary of agriculture, and gave that officer jurisdiction in
matters pertaining to the eradication of bovine tuberculosis and
many other matters not material to this controversy.

Black Hawk County became a county area testing unit upon
the petition of 51 per cent of the owners of breeding cattle resi-
dent therein, under the provisions of Chapter 48, Laws of the
Fortieth General Assembly. Subsequently, the secretary of
agriculture, acting under the provisions of Chapter 23, Laws of
the Extra Session, enrolled the county as an accredited area, and
notified the board of supervisors to publish the required notice.
It was to enjoin the publication of this notice that this action
was commenced.

The petition and amendment thereto, to which the demurrer
was filed, are somewhat vague in essential particulars, but,
stated briefly, they present three principal contentions for de-
cision: that is, that Chapters 48 and 49, Laws of the Fortieth

General Assembly, which, as stated, were in force when Black Hawk County was designated as a county testing unit, were void because in violation of the state and Federal Constitutions; that Section 8 of Chapter 23, Laws of the Extra Session of the Fortieth General Assembly, violates Section 21, Article 1, of the Constitution of Iowa, which prohibits the enactment of any law impairing the obligation of contracts; that the action of the secretary of agriculture in attempting to enroll Black Hawk County as an accredited area was without jurisdiction or authority, for the reason that no petition signed by 75 per cent of the owners of breeding cattle resident in said county was ever presented to, or filed with, the department of agriculture; and that a sufficient number of the names signed to purported petitions and agreements so filed was obtained by fraud, or consisted of nonbreeders or nonresident owners of breeding cattle, or was unauthorized, or duplications, to reduce the percentage of bonafide petitioners and agreements to less than the required percentage. To the above should be added the allegations of withdrawals from petitions and agreements, and that the secretary of agriculture, at the time he enrolled said county as an accredited area and notified the board of supervisors thereof, knew that the petitions and agreements on file in his office did not equal 75 per cent of the owners of breeding cattle in said county, and that he was, therefore, guilty of at least constructive fraud in making such enrollment.

The remaining contention of appellee is that Section 26 of Chapter 23, Laws of the Extra Session of the Fortieth General Assembly, which requires the county auditor of each county in which the county eradication plan is in force to certify to the secretary of agriculture the number of owners of breeding cattle in his county, after each annual assessment, as shown by the assessors' rolls, was not complied with, and that such compliance is jurisdictional, and that the secretary of agriculture can act only when same is complied with. The demurrer admits that the requirements of this section were not complied with.

To these contentions of appellee's, appellants reply that whatever defects, if any, existed in the petitions and agreements filed, or in the procedure for the enrollment of said county as an accredited area, and the act of the secretary of agriculture

in enrolling same, were all cured by Chapter 94, Supplement to the Laws of the Extra Session of the Fortieth General Assembly, which is a legalizing act passed for that purpose; that the enactments assailed on constitutional grounds were, in effect, designed to protect the public health; and that notice and a hearing on the petition were not essential. The demurrer also challenges the sufficiency of the allegation of the petition to state a cause of action, or to have the relief sought.

I.  If appellee sought, in the language of his petition, to have the constitutionality of Chapter 48, Laws of the Fortieth General Assembly,—which, as already indicated, was repealed by Chapter 23, Laws of the Extra Session,— passed upon as an existing statute, we would be compelled to hold the allegations insufficient for that purpose. A pleading assailing the constitutionality of a legislative enactment must point out specifically the clause or section of the Constitution which it is claimed is infringed thereby, and also designate the grounds upon which the claim is based. *State v. Wilson,* 124 Iowa 264; *State v. West,* 197 Iowa 789; *State ex rel. Woodbury County A. S. L. v. Ross,* 186 Iowa 802; 8 Cyc. 800.

1. CONSTITUTIONAL LAW: procedure to test constitutionality: pleadings required.

The petition does not refer to the clause of the Constitution, state or Federal, with which it is claimed Chapter 48 is in conflict. The court will not search these documents to determine whether the enactment violates some provision thereof. The validity of Chapter 48 is material in this form of action, if at all, only for the reason that a county cannot be enrolled as an accredited area by the secretary of agriculture until it has been designated as a county testing unit. The question is, however, so entirely free from doubt that we prefer to pass upon it, notwithstanding the insufficiency of the plea, for the benefit of the court below in the event of further proceedings therein in this case. If we get the thought of counsel for appellee, it is that the omission from Chapter 48 of any provision for a hearing upon notice before the board of supervisors to determine the sufficiency of the petition and agreements filed by breeders of any county for the purpose of having the same designated as a county testing unit, amounted to a denial of due process of

2. CONSTITUTIONAL LAW: due process: hearing and notice unnecessary.

law. The contention entirely overlooks the plain scope and language of the enactment. We have set out Sections 10 and 10-b in full. Reference thereto will disclose the purpose of filing petitions and agreements, and also the procedure to be followed to have the designation of a county as a county testing unit made. The duty and powers of the commission of animal health and the procedure to be followed thereby are fully outlined and limited by Section 10-f of Chapter 48, which, so far as material, is as follows:

"The commission of animal health shall, when it has designated any county as a unit for the eradication of bovine tuberculosis under the county area plan, appoint one or more accredited veterinarians as tuberculosis inspectors for such county, and such inspectors shall operate under the direction and control of the commission of animal health and shall test the breeding cattle of such owners as shall have signed agreements with the commission of animal health as provided in Section 10 of this chapter. * * *"

The inspection authorized by Section 10-f is of the herds of such owners "as shall have signed agreements with the commission of animal health." See, also, Section 10-k, relating to waiver, etc. Surely, the owners of breeding cattle who have not signed the agreement as required by the law can be in no wise prejudiced by the action taken by 51 per cent of the breeders of the county of their residence, or by the order of the commission of animal health designating it as a county testing unit; nor do we know of any constitutional inhibition upon the right of any owner of breeding cattle to voluntarily agree with the state that his herd may be inspected by an accredited veterinarian, or to have any animal found to be infected with tuberculosis or any other contagious or infectious disease slaughtered, with or without compensation. This is the extent of the law criticized.

II. The petition also challenges the  constitutionality of Chapter 49, Laws of the Fortieth General Assembly, in the language above referred to, and adds "as amended." This chapter contained but three sections, two of which amended Chapter 287, Laws of the Thirty-eighth General Assembly, in some slight particulars, the third containing only the publica-

tion clause. Sections 1 and 2· were repealed by Chapter 23, Laws of the Extra Session, but were re-enacted as a part thereof. Chapter 49 was not amended, but, as stated, was repealed. No reference is made in the pleading, unless by inference, to Chapter 23, and we cannot assume that it was the intention of the pleader to question the validity thereof. In so far as the provisions of Chapter 49 may be material to the inquiry as to whether Black Hawk County was properly designated as a county testing unit, if at all, this will be disposed of under another division of this opinion.

III. The provisions of Section 10, Chapter 287, Laws of the Thirty-eighth General Assembly, as to compensation for animals which it might be found necessary to slaughter on account of the presence of tuberculosis, were modified by

3. CONSTITUTIONAL LAW: impairment of contracts: noninjured complainant.

Chapter 48, Laws of the Fortieth General Assembly, so as to require a deduction of 5 per cent from the appraised value of the slaughtered animal before computing the amount to be paid. This provision is also incorporated in Section 8, Chapter 23, Laws of the Extra Session. The petition alleges that this provision of Section 8 is violative of Section 21, Article 1, of the Constitution of this state, which prohibits the enactment of any law impairing the obligation of contracts.

There are at least two obviously sound reasons why this contention of appellee's cannot be sustained. In the first place, appellee does not allege that he is a breeder of cattle, or that he signed an agreement consenting that his herd, if he is in fact a breeder, might be tested under the act; nor does it appear that he is in any way prejudiced by the change in the law. He is not, therefore, in a position to question the validity of the enactment upon the ground alleged. *Thompson v. Mitchell*, 133 Iowa 527; *Home Sav. Bank v. Morris*, 141 Iowa 560; *Standard Stock Food Co. v. Wright*, 225 U. S. 540 (56 L. Ed. 1197); *Hooker v. Burr*, 194 U. S. 415 (48 L. Ed. 1046); *Atwood v. Buckingham*, 78 Conn. 423 (62 Atl. 616); *Joesting v. City Council of Baltimore*, 97 Md. 589 (55 Atl. 456); *St. George v. Hardie*, 147 N. C. 88 (60 S. E. 920); *Chesapeake & O. R. Co. v. Conley*, 230 U. S. 513 (57 L. Ed. 1597); *Adams v. Central of Georgia R. Co.*, 189 Ala. 665 (66 So. 628); *McGlue v. County Com. of Essex*

*Co.,* 225 Mass. 59 (113 N. E. 742); *Roseville Trust Co. v. Mott,* 85 N. J. Eq. 297 (96 Atl. 402); *State v. Heffernan,* 40 R. I. 121 (100 Atl. 55). Such is the unanimous holding of the courts of this country.

In the next place, even if, for the purpose of the present case, the invalidity of the particular provision of Section 8 which appellee assails be conceded, the rest of the section and

4. CONSTITUTIONAL LAW: unconstitutional in part: effect.

chapter would not necessarily be invalidated, and in this instance clearly would not be. *McCollum v. McConaughy,* 141 Iowa 172; *Santo v. State,* 2 Iowa 165; *City of Keokuk v. Keokuk N. L. Packet Co.,* 45 Iowa.196; *Packet Co. v. Keokuk,* 95 U. S. 80; *Henkle v. Town of Keota,* 68 Iowa 334; *Brady v. Mattern,* 125 Iowa 158; *Eckerson v. City of Des Moines,* 137 Iowa 452; *Hubbell v. Higgins,* 148 Iowa 36. This being true, the point urged is without merit in this controversy, and will not be passed upon.

What we have already said disposes of all questions raised by appellee affecting the constitutionality of the several enactments referred to, or any part thereof. We shall not, therefore, consider appellants' contention that the laws referred to were designed to operate as health measures.

IV. The sufficiency of the petitions and agreements filed with the department of agriculture to give the secretary jurisdiction or authority to act is challenged upon many grounds, as

5. CONSTITUTIONAL LAW: legislative department: legalization of illegal acts.

we have already indicated. The demurrer admits all of the ultimate facts alleged in the petition that are well pleaded. It is alleged therein that the petitions and agreements relied upon were substantially all signed and filed under the provisions of Section 10, as originally enacted, or as amended by Chapter 48, Laws of the Fortieth General Assembly; that names so signed cannot lawfully be counted by the secretary of agriculture; that many names appearing thereon were not the names of owners of breeding cattle, as shown by the assessors' rolls of Black Hawk County; that many of such signers are nonresidents of the county; that there are duplications of signatures; that others were induced to sign the petitions upon the representations of those circulating same that they would not be used for the purpose of securing Black Hawk County to be enrolled as an

accredited area; that many names have been withdrawn; and that because of these matters the number of bona-fide subscribers to said petition and agreements is far less than 75 per cent of the owners of breeding cattle in said county; that the secretary of agriculture knew, or was charged with knowledge of, the above matters; and that his act in enrolling Black Hawk County was, because thereof, without authority and, at least constructively, fraudulent and wholly void.

Subsequent to July 8, 1924, the date on which the petition in this case was filed, Section 25 of Chapter 23, Laws of the Extra Session of the Fortieth General Assembly, relating to the enrollment of counties by the secretary of agriculture as accredited areas, was amended, as follows:

"In determining the 75 per cent referred to in this section, any agreement which has been filed with the secretary of agriculture shall be included for the period of two years thereafter." Chapter 95, Supplement to the Acts of the Extra Session of the Fortieth General Assembly.

On the same day, the legislature enacted Chapter 94 of the Supplement to the Laws of the Extra Session, which, in express terms, legalized the act of the secretary of agriculture of which complaint is now made. Both of the above acts went into effect July 30, 1924. The demurrer was submitted on November 4th following, and overruled on the 18th. Final decree was entered, however, March 6, 1925.

Chapter 94 is entitled:

"An act to legalize the enrollment by the secretary of agriculture of certain counties under the accredited area plan for the eradication of bovine tuberculosis."

This is followed by a preamble, which recites that:

"Whereas, as the law now reads, it is quite difficult for the secretary of agriculture to determine accurately the number of owners of breeding cattle in any county, who have signed agreements in force * * *;" and that, ostensibly at least, the requisite number of good-faith agreements have been filed in such counties; and that the secretary of agriculture has in good faith enrolled the same as accredited areas, therefore, etc.

Then follows the act.

No pleading of any kind in any way questioning this enactment was filed in the court below; but it is argued in this court that the legislature cannot, by a curative act, validate an unconstitutional statute, or a proceeding void for want of jurisdiction, or an act which it could not previously have authorized. For present purposes, these contentions may be conceded. There being no proper pleading calling into question the constitutionality of Chapter 23, Laws of the Extra Session of the Fortieth General Assembly, this question is eliminated from discussion.

It is, of course, conceded by all parties that the legislature may legalize any act which might have been omitted from the law or which it had constitutional power to enact. *Richman v. Supervisors Muscatine County,* 77 Iowa 513; *McSurely v. McGrew,* 140 Iowa 163; *Windsor v. City of Des Moines,* 101 Iowa 343; *Ferguson v. Williams,* 58 Iowa 717.

There is no allegation in the petition that the total number of names in fact signed to agreements on file with the department of agriculture was not equal to 75 per cent of the owners of breeding cattle in Black Hawk County. If such was the case, and 75 per cent of the breeders had, ostensibly at least, signed agreements that were on file in the department of agriculture, then the act of the secretary in enrolling Black Hawk County as an accredited area was not *per se* void, but, at most, voidable.

The case is not one in which the act of an officer or tribunal was undertaken without notice when notice is essential. Whether or not, if the legislature had omitted the provision requiring petitions or agreements to be filed, such omission would have rendered the act invalid, it is certain that the legislature could have fixed the percentage at less than 75 per cent, e. g., 52 per cent. If the state legislature has such power, then why can it not legalize the act of the secretary, if it were doubtful as to whether the required number of agreements was on file, or if it was difficult or impossible to determine the question accurately? The designation of the percentage as 75 per cent of the owners of breeding cattle in any county was purely arbitrary, and could as well have been made greater or less. We perceive no reason, therefore, why Chapter 94 was not ef-

fective as a curative act operative upon all matters argued, including the plea of fraud. The legislature did not attempt to legalize fraud, or . an act of a public officer constructively fraudulent. The allegations of the petition that, when the petitions and agreements were circulated in Black Hawk County by those favoring the county area eradication plan, it was represented to prospective signers that the only purpose was to have the county unit plan adopted, and that the documents signed by them would not be used for the enrollment of the county as an accredited area, and that same were signed with the understanding and belief that these representations were true, even if deemed admitted by the demurrer, cannot avail appellee.

So far as the allegations of the petition disclose, the subscribers to whom the alleged representations were made, are not complaining. They may, in fact, desire that the agreements be counted by the secretary of agriculture in determining the total number filed. Furthermore, the representations alleged to have been made were, at most, the mere expression of an opinion or of a mistaken interpretation of law, neither of which would be in any respect binding upon the legislature.

The allegation that the act of the secretary of agriculture in enrolling Black Hawk County as an accredited area with knowledge of the facts heretofore recited was constructively fraudulent, is a mere deduction, or conclusion of law, and cannot be deemed admitted by the demurrer.

There are no other allegations of fraud to be considered.

The authority conferred upon the secretary of agriculture by Chapter 95, Supplement to the Laws of the Extra Session, is not retroactive; but the curative act fully meets appellee's contention that the petition and agreements filed under the preceding act could not be counted.

V. The sole remaining proposition to be disposed of is the alleged failure of the county auditor to certify to the department of agriculture the number of owners of breeding cattle in Black Hawk County after each annual assessment, as shown by the assessors' roll. This allegation of the petition is admitted by the de-

6. Statutes: construction: non-mandatory statutes.

murrer.   The purpose of this statute is obvious: it is to provide the secretary of agriculture with information necessary for his use in determining the number of agreements that must be filed before the county can be enrolled as an accredited area. The statute is clearly directory, and strict compliance therewith is not at all essential to confer jurisdiction upon the secretary of agriculture to act.   This does not mean that the statute is not binding upon the auditor, or that he may ignore it; but his failure to perform his official duty in this particular is not conclusive or binding upon the secretary of agriculture. He may obtain the information from other sources, and proceed to act thereon.   The contention on this point is without merit.

Further discussion of the propositions raised is unnecessary. The conclusion upon the record before us is obvious and inevitable.   The petition does not state a cause of action, nor is appellee entitled to the relief prayed.

The demurrer should have been sustained.   The cause is, therefore, reversed and remanded to the court below for such further proceeding as may be proper in harmony with this opinion,—*Reversed and remanded.*

All the justices concur.