### ARNOLD vs. BOOTH.

In an action brought in the district court of the United States for the district of Wisconsin, by a citizen of another state against a citizen of this state, to recover a penalty for a violation of the act of Congress commonly known as the Fugitive Slave Law, the question whether that act was constitutional was a question going to the existence of the cause of action, and not to the jurisdiction of the court; and the judgment of that court, however erroneous, is binding until reversed.

ERROR to the Circuit Court for *Milwaukee* County.

The case is stated in the opinion of the court.

*J. E. Arnold* and *N. J. Emmons*, for appellant:

1. The act of Congress of February 12th, 1793, and the act of September 18th, 1850, are constitutional. 16 Peters, 341; 5 How. (U. S.), 215; 13 id., 429; 14 id., 13. 2. The judgment of the district court of the United States, set up in the answer, cannot be directly or indirectly reviewed, annulled or impaired by any action of the state courts. Even though erroneous, it is binding until reversed by writ of error to that court. *Glenn vs. Hodges*, 9 Johns., 67; *Weimer vs. Sloan*, 6 McLean, 259; *Johnson vs. Tompkins*, 1 Baldwin, 571; *Case of Sims*, 7 Cush., 285; *Case of McLaughlin*, 5 Watts & S., 276; *Wright vs. Deacan*, 5 S. & R., 62; *Yates vs. Lansing*, 9 Johns., 396; *Case of Watkins*, 3 Peters, 193; *Case of Passmore Williamson*, 2 Casey's Pa. R., 9. The Fugitive Slave Act of 1850 attempted to confer no new *jurisdiction* on the federal courts, but proposed merely to create a new *right of action*. The district court possessed jurisdiction of the parties and the subject matter in virtue of the

Judiciary Act of 1789.   1 U. S. Statutes at Large, 78, sec. <span></span>June Term,
11; Act organizing the District Court of Wisconsin, August <span></span>1861.
6, 1846, R. S., 1849, p. 790.  We may concede that the <span></span>ARNOLD
Fugitive Slave Act is void, or that it had been repealed, or <span></span>v.
<span></span>BOOTH.
never existed in fact; it would only follow that the district
court had erred in supposing the existence of a valid cause
of action.   The case does not differ from any other of mere
error of judgment upon the law.    *McNeil vs. Bright*, 4 Mass.,
282–304; and authorities above cited.   3. That section of
the law of this state commonly known as the Personal Liberty Act, under which these suits were brought, is contrary
to the constitution of this state, and to the constitution and
laws of the United States, and is void.   The powers surrendered by the several states and conferred on the United
States by the constitution, are *exclusive* in the United States.
Const. of U. S., Art. VI, sec. 2.   And the judges of the
state are sworn to support the constitution of the United
States.   Same Article, sec. 3.   See *United States vs. Peters*,
5 Cranch, 115; *Wyman vs. Southard*, 10 Wheat., 1; *Bank
vs. Halstead*, id., 51; *Beers vs. Houghton*, 9 Peters, 329; *Kening vs. The Bank*, 16 id., 89; *Suydam vs. Brodnax*, 14 id.,
69; *Bronson vs. Kinzie*, 1 How., 311; *McCracken vs. Haywood*, 2 id., 608; *Brown vs. Clark*, 4 id., 12; *Massingill vs.
Downs*, 7 id., 760; *Sellers vs. Cowen*, 5 Ohio, 404; *Manhattan
Bank vs. Everton*, 6 Paige, 466; *Konig vs. Bayard*, 2 Paine
C. C. R., 251.   A state cannot do what the federal constitution says it shall not do.   *Briscoe vs. The Bank*, 11 Peters,
257; *Craig vs. State of of Missouri*, 4 id., 431.

*James H. Paine & Son*, for respondent:

1. The district court of the U. S. for the district of Wisconsin is a court of limited jurisdiction, and has no jurisdiction except what it derives from acts of Congress.
*United States vs. New Bedford Bridge*, 1 W. & M., 401; *Boone
vs. Poindexter*, 12 S. & M., 640; *Shelton vs. Tiffin*, 6 How.,
163; *Belknap vs. Northern R. R. Co.*, 25 Vt., 715; *Shute vs.
Davis*, Peters' C. C. R., 431; *Livingston vs. Van Ingen*, 1
Paine C. C. R., 45; *P. M. General vs. U. S.*, 12 Peters, 524;
*Steamboat Orleans vs. Phœbus*, 11 id., 175; 4 Dallas, 10, note;
*State of Rhode Island vs. State of Massachusetts*, 12 Peters,

June Term, 718 ; *Dred Scott Case*, 19 How. (U. S.), 393 ; *Booth's Case*,
1861.
_____ 3 Wis., 179 et seq.—opinion of Justice CRAWFORD. 2. The
ARNOLD    Fugitive Slave Act of 1850 is unconstitutional and void.
v.
BOOTH.    *Booth's Case*, 3 Wis., 1. 3. The district court had therefore no
jurisdiction of the subject matter of this action. That sub-
ject matter was the recovery of a penalty given by the Fu-
gitive Slave Act, for a violation of that act. That act alone
gives authority to bring a suit for this subject matter in the
U. S. court. If therefore that act is void, the authority which
it attempted to give to the U. S. courts to entertain suits for
violations of it, fails with the act itself. The 9th section of
the Judiciary Act of 1789 gives the U. S. district court ex-
clusive jurisdiction of suits to recover penalties or forfeitures
given by any laws of the United States. Under this the
jurisdiction of the district court in this case would have been
unquestionable, provided the Fugitive Act had been *a law
of the United States;* but being unconstitutional it was *no
law*, and the suit stood on the same footing as if there never
had been such an enactment. Opinion of Justice DANIEL
in *Dred Scott Case*, 19 How. (U. S.), 457 ; *Rose vs. Himeley*,
4 Cranch (S. C.), 241 ; *Rogers vs. Dill*, 6 Hill, 415 ; *William-
son vs. Berry*, 8 How. (U. S.), 495 ; *Thomas vs. Crossin*, de-
cided in supreme court of Pa., in 1854, 3 Livingston's Law
Mag., 267 ; *Case of Miller*, 1 Black, 441 ; *Yeaton vs. United
States*, 5 Cranch, 281 ; *Norris vs. Crocker*, 13 How.
(U. S.), 440 ; *Commonwealth vs. Marshall*, 11 Pick., 350 ;
*Stoever vs. Immell*, 1 Watts, 258 ; *Commonwealth vs. Beatty*,
id., 328 ; case of *Booth* and *Rycraft*, 3 Wis., 157. 4. This court
may inquire in this case whether the circuit court had ju-
risdiction. Wherever a judgment is set up as the founda-
tion of a right, the jurisdiction of the court rendering such
judgment may always be inquired into, whether it come in
question directly or collaterally, and if it had no jurisdiction
its judgment is a nullity. 5 Johns., 37 ; 8 id., 194 ; 15 id.,
121–134 ; 19 id., 7 ; 9 Cow., 227 ; 5 Wend., 148 ; 6 id., 438,
448 ; 11 id., 648 ; 12 id., 104 ; 2 Hill, 159 ; 5 id., 168 ; 6 id.,
415 ; 1 Denio, 158 ; 3 id., 279 ; 5 Barb., 607 ; 6 id., 607–13 ;
4 Seld., 254 ; 1 Mass., 410 ; 9 id., 464 ; 4 Cush., 27 ; 3 Bin-
ney, 220 ; 3 Livingston's Law Mag., 267 ; 1 Day, 429–449 ;

3 Cranch, 331; 4 id., 241; 1 Peters, 328; 2 id., 157; 8 id., 112, 140; 3 How., 750; 5 . Curtis, 628 ; 8 How., 495; 17 Curtis, 669.

June Term, 1861.

ARNOLD
v.
BOOTH.

October 1.

*By the Court,* COLE, J. This was an action commenced in the circuit court of Milwaukee county by the defendant in error, for the purpose of recovering one Hoe's large cylinder printing press, and one portable steam engine for working the said press, of the value of twenty-five hundred dollars, which, it was alleged, had been unjustly taken and were unjustly detained by the plaintiff in error. In his answer, the plaintiff in error denied that the defendant in error was lawfully entitled to the possession of the property mentioned in the complaint; and denied that he unjustly took or unjustly detained the same; but averred "that he was, at the time of the commencement of this action, and is now, the lawful owner of said property; that the same was, on the 24th day of February, 1857, duly seized by the United States marshal for the district of Wisconsin, as the property of the said plaintiff, under and by virtue of an execution duly issued upon a judgment duly rendered in the district court of the United States for the district of Wisconsin, on the 6th day of August, 1855, in an action duly pending therein, in which Benammi S. Garland, a citizen of the state of Missouri, was plaintiff, and the said plaintiff in this action was defendant, for the sum of twelve hundred and forty-six dollars; and that the same was duly advertised and sold by the said marshal upon said execution; and that the said defendant being the highest and best bidder therefor, the same was sold and delivered to him by the said marshal; and he further avers that said judgment, upon which said execution was issued, was a valid and subsisting judgment in full force and unsatisfied."

Upon this issue the cause came on to be tried before the circuit court—a jury being waived by the parties—when the plaintiff in error, the defendant below, to establish his defense, produced, proved and read in evidence the proceedings in a certain suit, and the record of a judgment therein recovered, in the United States district court for Wisconsin,

duly rendered on the 5th day of August, 1855, in favor of one Benammi S. Garland, against the defendant in error, whereby said defendant in error was convicted in a plea of debt, under the fugitive slave law of 1850, in the sum of twelve hundred and forty-six dollars, debt, damages and costs; and also offered in evidence the execution issued upon such judgment to the marshal, from which it appeared that after levy and due advertisement, the personal property was duly sold and delivered to him by the marshal, as was set forth in the answer. This record and proceedings, and the execution, were received in evidence, subject only to the objection on the part of the plaintiff, that they were invalid by reason of the unconstitutionality of the fugitive slave law. The circuit court ruled and decided that such record, judgment, execution and sale, constituted no sufficient defense to the action, and gave judgment against the defendant, who prosecutes this writ of error.

It is now insisted and claimed on the part of the defendant in error, that this decision of the circuit court, holding that the several matters offered in evidence on the part of the defendant below did not bar the action, was correct and must be affirmed; and the argument in support of this view of the case, as I understand it, is briefly the following:

The United States circuit court is a court of limited jurisdiction, having no jurisdiction except such as it derives from acts of congress; and as this court, in the cases of Booth and Rycraft, reported in 3 Wis. R., declared the fugitive slave law unconstitutional, it is contended that it is an inevitable logical sequence of the decision pronouncing the law void, that the district court had no jurisdiction of the suit in which the judgment set up in the answer was rendered. For it is said, in order to make the judgment of a court valid, such court must have jurisdiction of the parties and subject matter of the suit; and while the particular record offered in evidence in the court below contained the proper allegations to give the district court jurisdiction of the parties, it likewise showed that the subject matter in controversy in the district court was solely the recovery of a penalty given for the violation of an unconstitutional law; therefore the judg-

ment rendered by the district court in that suit was a nul-
lity, and must be treated in a collateral proceeding as *coram*
*non judice*, and cannot be the foundation of any right what-
ever.

In answer to this argument it is insisted and claimed on
the other side, that the question of the constitutionality of
the fugitive slave law is not involved here, and cannot arise
in the case; because, it is insisted, that act attempted to
confer no new jurisdiction on the federal courts, but merely
gave a new right of action. It is said, the district court of
Wisconsin possessed jurisdiction of the parties and of the
subject matter of the suit, by virtue of the judiciary act of
1789 (1 U. S. Statutes at large, p. 78, sec. 11), and of the act
organizing the district court for this state (R. S., 1849, p. 790);
and that it might be admitted, for the purposes of this case
and the questions which can legitimately arise upon the rec-
ord, that the fugitive slave law was void, or had been re-
pealed when the suit was commenced, or never in fact
existed; and that then, in this aspect of the case, it would
only appear that the district court erred in supposing there
was a valid cause of action when none in fact existed, but
that the judgment rendered, though palpably erroneous, is
not void, but voidable, binding until set aside or reversed,
and cannot be treated as a nullity in a collateral suit.

I must confess that this reasoning, when advanced, struck
me with much force; and after all the reflection I have given
the question, I am unable to perceive why it is not sound
and conclusive.

I do not understand that counsel differ upon the proposi-
tion that the circuit and district courts of the United States
must be regarded as courts of special and limited jurisdic-
tion, and are confined to the particular cases, controversies
and parties over which the laws of congress give them cog-
nizance, or power to try and determine. Nor do I under-
stand them to disagree upon the further proposition, that
every court which is called upon to recognize or enforce the
proceedings of another, is entitled to examine into the juris-
diction on which those proceedings are founded, and to dis-
regard them when without jurisdiction. It was also conce-

ded that "when a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court." A contest, however, arises in applying these admitted principles of law to the present case. It therefore becomes necessary to inquire, whether the district court had jurisdiction, or lawful authority to hear and determine the suit brought by Garland against Booth to recover a penalty given by the fugitive slave law.

The United States district court is expressly authorized to hear and determine suits between citizens of different states (one being a citizen of the state where the action is brought), when the value of the matter in dispute brings the case within the limitation of the 11th section of the judiciary act. When, from the character of the parties and the value in dispute, the cause comes within the description of that section, then, from the nature of the power and duty of the district court, it must decide upon all questions having application to the case in judgment. These questions may arise out of a contract between the parties, or relate to the title of real or personal property, or they may arise under the laws and constitution of the United States, or under the laws and constitution of a state. It is objected, however, that the reasoning is too general; that the question of the jurisdiction of the district court cannot be determined by the proposition that that court has power to hear and decide controversies generally between citizens of different states, or to entertain a class of actions to which the one in question belongs, but that it is to be determined in each suit for itself, by an inquiry whether there is a subject matter in that particular suit on which the court has authority to adjudicate and render judgment.

It is said the above reasoning would apply in a case where the question was merely as to the sufficiency of a pleading which attempted to set up a cause of action on a subject matter over which it was conceded the court had jurisdiction; as for example, if a suit were brought for an alleged violation of the Fugitive Slave Law—that law being valid—and

June Term,
1861

ARNOLD
v.
BOOTH.

a demurrer should be filed to the complaint, for the reason that it did not allege a violation of that law, which demurrer the court should overrule and give judgment; then it is conceded this judgment would be conclusive in any collateral suit. It seems to me that the above proposition is conclusive upon the question as to whether the district court had jurisdiction, that is, the right to entertain and determine the suit brought by Garland against Booth for a violation of the Fugive Slave Law. For to bring the above supposed case to the test of close scrutiny and to see what it proves, suppose the Fugitive Slave Law unconstitutional (as I conscientiously believe it to be), and that to a complaint for an alleged violation of it, a general demurrer were filed; would the district court have the lawful right and authority to hear and determine the questions arising upon the demurrer? It seems to me this question must be answered in the affirmative. Yet it is apparent that such a demurrer would raise for consideration and decision the question of the validity of the law under which the action was brought, as well as the one whether the complaint was sufficient as a pleading. Suppose the district court should hold the complaint bad on either ground, and give judgment; would it not be lawful for it to do so? Could it not rightfully act upon the demurrer, decide all questions raised by it, and sustain it for the reason that the law is unconstitutional? Obviously the cause of action in the suit of Garland against *Booth* was a penalty given by the Fugitive Slave Law for a violation of its provisions. But whether there was any law in existence giving this right of action, and, if so, whether the law was valid and binding, were legitimate matters of consideration for the district court, as was the question of its violation. The court might have held that there was no cause of action because the law was void. It had jurisdiction of the case thus to decide. This it seems to me is incontestible. I do not wish to be understood as saying that a court may give itself jurisdiction by deciding that it has it, or that other courts would be concluded by such a decision when that question came before them. For this would be merely holding that the exercise of power by

a court proved the rightful exercise of such power—a position for which no one would probably contend. I am endeavoring to make obvious to others, what is plain to my own mind, namely, that the question arising upon the record offered in evidence is not really one going to the jurisdiction of the district court, but one touching the question as to whether in fact there was any cause of action. If I am right in this view of the case, it would then follow that the decision of that court holding that a good cause of action existed, however erroneous, must be binding until reversed.

The record of the district court is not before me in full. If it were, I do not think it probable that it shows that a plea in abatement. to the jurisdiction of the district court was interposed in the suit of Garland against *Booth*. Neither do I think it would occur to counsel wishing to test the constitutionality of a law of congress giving a right of action for a penalty, like the Fugitive Slave Act, to raise the question as to its validity by a plea in abatement to the jurisdiction of the court, rather than by a demurrer to the complaint. Still, if the question whether the law is void, be a matter going to the jurisdiction of the court, the proper practice would be to put in a plea to the jurisdiction.

Therefore, inasmuch as the district court has jurisdiction of suits between citizens of different states, when the subject matter in dispute exceeds a given amount, I think it could lawfully hear and determine the action brought by Garland against *Booth* for a penalty given by the Fugitive Slave Law. It seems to me that it is analogous in principle, and that the same rule must apply here that is held to apply in cases where the jurisdiction of a court extends over a class of cases but the court gives judgment in a particular case where the facts and law do not authorize it. In such a case the judgment cannot be questioned in a collateral proceeding.

In the case of *McNeil vs. Bright et al.*, 4 Mass. R., 282, a judgment came collaterally in question which was based upon the supposed existence of certain confiscation acts; and it was insisted that those acts had been repealed when the

judgment was rendered, and that it it was therefore void; but the court give a distinct and unqualified negative to this position, and say that if there was no law authorizing its rendition, it would follow that the judgment was erroneous, but not that it was a nullity. This is likewise analogous in principle to the doctrine laid down in the case of *Brittain vs. Kinnaird*, 1 Brod. & Bing., 432, commented on in *Wanzer vs. Howland*, 9 Wis. R., 8, where it was held that a judgment rendered in the exercise of a rightful jurisidiction must be regarded as conclusive upon all points directly involved and necessarily determined by it.

There is also a strong case in 2 Salkeld, 675, *Prigg vs. Adams*, where in an action for false imprisonment, the officer justified under a *ca. sa.* on a judgment in the court of common pleas upon a verdict for five shillings for a cause of action arising in Bristol. The plaintiff replied an act of parliament erecting a court in Bristol and declaring that if any person brought any such action in a court at Westminster, and it appeared upon trial, to be under forty shillings, no judgment should be entered upon it, and if entered it should be *void;* yet the court held it only voidable, not void. Other cases of like import might be readily cited were it deemed necessary; but after all, the question whether the district court had jurisdiction of the suit brought by Garland against *Booth* for a penalty given by the Fugitive Slave Law, depends for its solution rather upon the application of general principles of law, than upon the authority of any direct adjudication I have been able to find. It seems to me the case is not essentially different from what it would have been had the cause of action in that suit been a promissory note, void upon it face, it appearing that it had been given to compound a felony, or for a gaming debt, or was usurious, and the district court had rendered judgment for the amount of the note. Clearly, in a collateral proceeding, such a judgment would not be treated as a nullity on the ground that the court had no jurisdiction, although it would at once be reversed on error. So while holding that the fugitive slave law is an unconstitutional enactment, I am still constrained to decide that the district court had jurisdiction to hear

June Term, 1861.

and determine the suit brought by Garland against *Booth* for a penalty given for a violation of its provisions, and that the judgment of that court is binding until reversed.

I therefore think that the circuit court erred in ruling that the record of the proceedings and judgment in that suit, and the sale upon the execution issued thereon, constituted no defense to this action.

The judgment of the circuit court is reversed, and a new trial ordered.

PAINE, J., having been of counsel in the cause, took no part in the decision.