GOLDEN, Appellant, vs. GREEN BAY METROPOLITAN SEWER-
AGE DISTRICT and others, Respondents.

*December 5, 1932—January 10, 1933.*

For the appellant there was a brief by *Evans & Merrill* of Green Bay, and oral argument by *Fred D. Merrill.*

For the respondents there was a brief by *Meyer M. Cohen,* and oral argument by *Mr. Cohen* and *Mr. Isadore Alk,* both of Green Bay.

Separate briefs were filed by the *Attorney General* and *Samuel Bryan,* assistant attorney general, and by *William Ryan* of Madison, as *amici curiæ.*

FRITZ, J.   On September 22, 1931, a petition, which in form and substance complied with sec. 66.20 (4) (a), Stats., was filed in the county court of Brown county. That petition prayed for the establishment by the county court of the Green Bay Metropolitan Sewerage District to be composed of certain described territory, which included the cities of Green Bay and De Pere in their entirety, and parts or all of the towns of Preble, Allouez, De Pere, Lawrence, Ashwaubenon, Hobart, and Howard, in Brown county.   Upon a hearing, held after due notice had been given to all concerned, the county court found, upon conflicting evidence, "that much of the sewage from the city of Green Bay and from the towns of Allouez and Preble has been allowed to flow into the East river, and that the said river is in a grossly polluted condition by reason thereof; that public health, welfare, safety, comfort, and convenience require the cleaning up of the said East river without unnecessary delay; that the city of Green Bay and

towns of Allouez and Preble have agreed by stipulation that a metropolitan sewerage district be formed, as hereinafter set out; that the pollution of the lower Fox river is due largely to contributions of sewage from the upper Fox river area, and to the flow and back-flow of the pollution from the East river; and for these reasons the public health, comfort, safety, and convenience do not now require the organization of all of the territory described in the petition or any of the territory omitted and not included in the territory hereby organized; and the public welfare will not be promoted by the inclusion of said omitted territory in a metropolitan sewerage district at this time; that the metropolitan sewerage district should be organized in the interests of the public health, welfare, safety, comfort, and convenience, and should consist of" certain territory, which was described in detail, and which included only parts of the towns of Preble and Allouez, which were within the watershed of the East river, and also all of the city of Green Bay. In connection with those findings the county court concluded "that public necessity requires the organization of the Green Bay Metropolitan Sewerage District within boundaries as described in the findings of fact, and that the organization of such district is conducive to the preservation of the public health, safety, comfort, convenience, and welfare;" and that court ordered judgment creating and organizing the district for the limited territory described in the findings. Judgment was entered accordingly, and no appeal was taken from that judgment.

Instead, the plaintiff herein collaterally attacked that judgment in this independent action, which he commenced in the circuit court, and in which he prays for judgment restraining defendants from issuing bonds or borrowing money or levying taxes or doing any other act as commissioners of said sewerage district; and declaring sec. 66.20,

Stats., and chs. 294 and 349, Laws of 1931, unconstitutional. In this action plaintiff contends that the county court judgment was void because that court had no jurisdiction whatsoever, under the only petition which was filed, to form a district consisting of less territory than the area described in that petition. In this connection it appears that the district as organized has somewhat less than one-half of the area, but has 38-43 of the population, and 11-13 of the assessed valuation of the area, which was to be included in the district as originally proposed in the petition. Plaintiff contends that inasmuch as it appeared on the hearing in the county court, and that court found that public health, etc., and the promotion of the public welfare do not require the organization of the entire territory, as proposed, or the inclusion of any of the territory omitted from the district as finally organized, the jurisdiction and power of the county court were limited to the entry of judgment dismissing the proceedings. That contention is based on sec. 66.20 (8) (b), Stats., which is as follows:

"If the court finds that the territory set out in the petition should not be incorporated into a district, it shall dismiss said proceedings and tax the costs against the signers of the petition."

However, upon a consideration in their entirety of the provisions of sec. 66.20, Stats., relating to the creation of metropolitan sewerage districts, it does not seem that a dismissal, without any alternative as to relief, is demanded by sec. 66.20 (8) (b), Stats., in every case in which a substantial portion, although not all, of the territory proposed in a petition should be organized as a sewerage district in furtherance of the purposes of sec. 66.20, Stats. Thus, that the statute did not intend to limit the court's power to act to an area, described precisely and with unalterable finality in the petition, is indicated by the wording of sec.

66.20 (4) (c), Stats., which, in prescribing the contents
of the petition, requires but "a general description of terri-
tory to be included in the proposed work." On the other
hand, sec. 66.20 (8) (a), Stats., relating to the judgment to
be entered, expressly authorizes and directs the court, by its
findings, to "establish the boundaries" of the district which
it declares organized. Furthermore, that the matter of de-
taching territory from a district as originally proposed, or
even as originally organized, is not deemed, under the stat-
utes, of such controlling significance that it can only be
adjudged upon the consent of or notice to the signers of
the original petition, is indicated by the entire omission of
any requirement as to such consent or notice in the provi-
sions, which authorize the subsequent detachment of lands
by the commissioners, in the first instance, and by the county
court on an appeal. See subdivisions (f) 2 and 4 of sec.
66.20 (8), Stats. Manifestly, all of those statutory pro-
visions indicate that some changes in the area as originally
described in a petition are permissible; and that the court is
authorized to adjudge such changes without notice to, or
the consent of, the original petitioners, whenever it finds,
upon evidence duly submitted, that public health, etc., do
not require the inclusion of all of the area originally pro-
posed, in the district as finally organized. The question as
to what territory, if any, is to be detached is an issue of
fact to be determined in each case as the question arises.
*State ex rel. Holland v. Lammers,* 113 Wis. 398, 415, 86
N. W. 677, 89 N. W. 501.

However, even if the county court did err in deciding
that issue of fact, or in construing the statute by erroneously
concluding that it authorized the organization as a sewerage
district of but a part of an entire area proposed originally
in a petition, its decision in either of those respects would
constitute judicial error in a proceeding in which it had

jurisdiction over the subject matter as well as the parties. Consequently, as to both its final adjudications, they are binding and *res adjudicata* in the absence of reversal or modification on an appeal therefrom. The principles and conclusions stated in the following excerpt from the opinion in *Stone v. Little Yellow Drainage Dist.* 118 Wis. 388, 392, 95 N. W. 405, are applicable in the case at bar:

"That jurisdiction generally over the subject matter is attempted to be conferred by these statutes cannot be doubted. That such jurisdiction was aroused by the filing of a petition complying at least substantially with those statutes is made plain by the record as set forth in the complaint, and from the same record it is apparent that notice in compliance with that statute was served upon the various persons interested—certainly upon the plaintiff here. Thence results complete jurisdiction of the persons so served. From all these it results by primary legal logic that a decision upon all the facts presented and upon a construction of the law governing the situation, followed by rendition of a final order or decree in accordance with such decision and construction, was also within the jurisdiction of the court. Such conclusion is in no wise controverted by a showing that any facts were decided wrong, or that the law was misconstrued. A remedy deemed by the legislators complete for the correction of any such errors existed in an appeal from the final order."

To the same effect see *State ex rel. Thompson v. Eggen,* 206 Wis. 651, 238 N. W. 404, 240 N. W. 839.

In sec. 66.20, Stats., the remedy by appeal from the county court's final judgment is authorized in sub. (8) (e) which is as follows:

"The decree of the court, whether for or against the organization of the district, may within twenty days after such decree, be appealed directly to the supreme court by any interested person feeling himself aggrieved, and the question presented upon said appeal shall be determined by such court upon the record made in the lower court."

That section, in connection with sec. 324.04, Stats., which relates to the practice and procedure on appeals from county courts to the supreme court, and which apparently is applicable to any appeal under sec. 66.20 (8) (e), in all respects, excepting in so far as the time within which to take an appeal is reduced by the latter provision to twenty days, instead of the sixty days allowed by sec. 324.04 (1), affords a complete and exclusive remedy for the correction of any error that may occur in the county court adjudication unless sec. 66.20 is entirely void because unconstitutional. That is true, even if plaintiff failed to actually participate in the hearing, or to appeal within the statutory time limit. He is, nevertheless, bound by the decree as effectively as if he had actually participated. *State ex rel. Atkinson v. McDonald,* 108 Wis. 8, 13, 84 N. W. 171; *Appeal of Schaeffner,* 41 Wis. 260, 264; *Triba v. Lass,* 146 Wis. 202, 204, 131 N. W. 357. The fact that the appeal authorized by sec. 66.20 (8) (e), Stats., can be taken within only twenty days after the decree does not render that provision unconstitutional as a denial of an adequate remedy. The right to appeal in civil proceedings is purely statutory and does not exist at all except when, and then only to the extent, granted by statute. *Clancy v. Fire & Police Comm'rs,* 150 Wis. 630, 138 N. W. 109; *Puffer v. Welch,* 141 Wis. 304, 124 N. W. 406; *Puhr v. Chicago & N. W. R. Co.* 168 Wis. 101, 169 N. W. 305; *Wildes v. Franke,* 157 Wis. 189, 146 N. W. 1119. Certainly if legislation withholding entirely the mere statutory right to appeal affords no ground for holding such legislation unconstitutional, then a limitation of the period to twenty days for the exercise of that right, in the very statute by which the right is created, and but for which it would not exist at all, is not unconstitutional. Furthermore, in *Newton v. Superior,* 146 Wis. 308, 321, 130 N. W. 242, 131 N. W. 986, the allowance of twenty

days to perfect an appeal from a determination by a common council as to damages and benefits in special assessment proceedings was held to afford due opportunity for a property owner to protect his rights, and constituted due process of law in the enforcement of tax laws; and in Arkansas it was held in cases involving appeals from adjudications under statutes in relation to the organization of drainage districts that a provision allowing twenty days for taking an appeal constituted due process of law. *St. Louis, I. M. & S. R. Co. v. Maple Slough D. Dist.* 138 Ark. 131, 211 S. W. 168.

The constitutionality of sec. 66.20, Stats., is challenged by plaintiff on the ground that in so far as sub. (13) (a), (8) (j), and (8) (g) of sec. 66.20, Stats., purport to authorize the three commissioners, who are to be appointed under sub. (9) (a) of that statute, by the court which created the district, to levy a direct annual tax upon all taxable property in the sewerage district for the purposes mentioned in those subdivisions, (13) (a), (8) (j), and (8) (g), sec. 66.20, Stats., is in violation of the general doctrine that the legislature of this state cannot delegate the legislative function of voting a tax to a non-elective administrative body, which is without legislative powers. *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 629, 108 N. W. 557; *State ex rel. Carey v. Ballard,* 158 Wis. 251, 257, 148 N. W. 1090. It is true that sub. (8) (j) and (8) (g) of sec. 66.20, Stats., direct the commission to levy a direct annual tax by resolution for the payment of the principal and interest of all bonds and obligations issued by them as authorized; and sub. (13) (a) authorizes the commission to levy an annual tax upon all the taxable property within the district "for the purpose of carrying out the provisions and performing duties under this section." In that section the tax to be levied by the commissioners, in excess of that required for main-

tenance and operation and for principal and interest on bonds, is limited to one mill for each dollar of assessed valuation of the taxable property in the district. It is also true that in sub. (13) (a) the commissioners are directed to "certify in writing to the clerks of the several cities, villages and towns having territory in such district, the total amount of tax assessed against the taxable property in each such municipality lying in whole or in part within the district;" and sub. (13) (b) provides:

"Upon receipt of such report the clerk of each such city, town or village shall forthwith place the same upon the tax roll to be collected as other taxes, and such moneys when collected shall be paid to the treasurer of such district."

Under those provisions no action whatsoever is to be taken by the legislative body of any city, village, or town within a sewerage district in relation to the tax to be levied for the purposes of the district. However, in view of the decision in *Thielen v. Metropolitan Sewerage Comm.* 178 Wis. 34, 189 N. W. 484, that in the final analysis such duties of a commission under a very similar statute, sec. 59.96, Stats., are but ministerial in nature, and not legislative, the contentions of plaintiff cannot be sustained. The mere difference between sec. 66.20 (13) (b) and sec. 59.96 (9) (a) as to the method and agencies by which the tax, which is to be collected, is ultimately to be placed upon the tax roll, in that under the latter section the commission, instead of being directed to certify the amounts to be paid to the clerk of the city, village, or town as prescribed in sec. 66.20 (13) (b)., is directed to certify such amounts to the governing body of the city, village, or town, which is directed then, by resolution, to levy and assess taxes sufficient to pay the same, does not result in any material or consequential distinction between the nature of the functions to be performed, under either statute, by the respective commissions and the governing bodies or clerks of the various municipalities. Each of

those commissions, whether created under sec. 59.96 or under sec. 66.20, Stats., is required by legislative mandate and in identical terms [see secs. 59.96 (6) (a) ; 66.20 (10) (a)], to "project, plan, construct and maintain" specified types of sewers in their respective districts. Although there are some inconsequential differences in the prescribed agencies and methods of placing the levies on the tax roll, nevertheless, under either statute, the tax is, as a matter of law, imposed by the legislature itself by virtue of the express terms of its enactments, and the ministerial function of placing upon the tax roll, for collection as taxes, the amount, which a commission finds, as a matter of fact, is required to carry out the legislative mandate, has not been left by the legislature to the legislative discretion of any other body or commission of any city, village, town, or sewerage district. Under each statute the legislature has prescribed that the commission shall perform in certain respects, which are of the same character. When there has been such performance by the commission, the city, village, and town officers are required by the statutes to also do certain things, as to which they likewise have no discretion; and the resulting taxes, which are to be collected as necessary to carry out the legislative scheme, are in legal contemplation imposed by the legislature itself by virtue of the express terms of its enactments, and are not the result of the exercise of any legislative power or discretion by the governing bodies of any of the municipalities. So in *Thielen v. Metropolitan Sewerage Comm., supra,* this court said :

"The legislature directed that the Metropolitan Sewerage Commission do certain things with reference to the construction and maintenance of the Metropolitan sewerage system and that the funds with which such system should be constructed and maintained should be provided in the way therein designated. The act therefore established the boundaries of the taxing district, directed what moneys should be raised by taxation, and left to the commission and the

various taxing officers merely the ministerial duty of determining the necessary amounts and providing therefor on the tax roll. In so doing it is clear there was not an unconstitutional delegation of either legislative or taxing power." Page 56.

Plaintiff also contends that if the taxes levied under sub. (8) (g), (h), (j) and (o), and (13) (a) of sec. 66.20, Stats., are not general taxes but, instead, are special assessments because the collections are to be used for a special purpose, then the statute violates the due process and equal protection provisions of the federal constitution, and the provision for uniform taxation in sec. 1, art. VIII, of the state constitution. Upon consideration of the statute in its entirety, it is manifest that the amounts which are to be collected for the purposes stated in sub. (8) (g), (h), (j) and (o), and (13) (a) of sec. 66.20, Stats., constitute general taxes and not special assessments. That both types are intended appears from the wording of sub. (12) of sec. 66.20, which provides that the provisions of law relating to collection of delinquent taxes shall apply to "said *special* assessments," and also "the collection of *general* taxes levied by the commissioners." As to general taxes, no other or further notice or process as to assessment or levy is of course necessary than that which a taxpayer is given in relation to any other item of the general taxes. On the other hand, as to special assessments, ample provision for notice to the taxpayer of such levy is made by sub. (12) (c) and (d) of sec. 66.20, Stats.

The contention that the uniform taxation provision of the state constitution is violated is also based upon the exemption of agricultural lands in sub. (11) (k) of sec. 66.20, which provides that—

"Lands used for agricultural purposes . . . shall not be subject to assessment . . . but as soon as such use ceases,

such lands shall be subject to assessment for benefits in the manner herein provided."

That provision, apparently, was intended to relate only to special assessments and the assessment of benefits to lands which, because of their use solely for agricultural purposes, were not considered benefited by such an urban type of improvement as long as they continued to be used solely for such agricultural purposes. However, as soon as such agricultural use ceases so that such lands become benefited by such sewerage facilities, then they become subject to assessments for such benefits as all other land similarly situated. Under such circumstances, the classification and exemption is permissible, and there is no violation of the provision that the rule of taxation shall be uniform.

Plaintiff also claims that the constitutional requirement as to uniformity in taxation is violated because the necessary sewers have all been made in the vicinity of plaintiff's land, and that neither he nor his land will be benefited by constructing a sewerage system for the purpose of purifying the water of the East river. The question as to the probable extent of the territory that will be benefited by the construction of a sewerage system, so that the owners of land in such area will have an interest in common in such sanitary improvement, is an issue of fact, which under sec. 66.20, Stats., is to be determined by the county court. If in determining those facts and arriving at its conclusions of law thereon that court errs to the extent that an aggrieved party is entitled to a reversal, such party can obtain that relief by resorting to the right to appeal which is granted by the statute. However, in the absence of relief on such an appeal, upon a review on the record of the evidence on which the trial court acted, all concerned are concluded by the finding and adjudication of that court. Consequently, it must now be accepted as a verity, which is not subject to collateral attack in this action,

that, inasmuch as the county court has found that it is in the interests of the public health, etc., and is required as a matter of public necessity, to organize a sewerage district within the boundaries described in that court's findings, the general benefits which will result from that public improvement will extend to all land within those boundaries. The fact that some parcels within those boundaries may not receive a direct benefit immediately does not invalidate the project in the absence of abuse or purely arbitrary action. *Miller v. Sacramento & S. J. D. Dist.* 256 U. S. 129, 41 Sup. Ct. 404, 65 Lawy. Ed. 859; *Houck v. Little River D. Dist.* 239 U. S. 254, 36 Sup. Ct. 58, 60 Lawy. Ed. 266. As this court said in *Thielen v. Metropolitan Sewerage Comm., supra:*

"It may well be that the benefits will be more immediate and direct in some cases than in others. It is plain that to construct a system which would be sufficient to provide for present needs only would be little short of folly. . . . Looking at the matter in the light of experience and taking into consideration the reasonable probabilities of the future, it must be said that the property embraced in the sewerage district receives a present benefit which fully justifies the exercise of the taxing power in this case. That matters of this kind should be dealt with in a large, comprehensive way, rather than in detail and piecemeal as the imperative necessity arises, seems apparent on a moment's consideration."

It is also contended that the statute is so uncertain in some of its terms that it should be declared void. There does not appear to be any such uncertainty in the respects which are urged in plaintiff's brief as to warrant the conclusion, under the facts as now presented by the record, that it will be impossible to apply the statute because of any fatal uncertainty in its terms. At all events, as we said in *Interstate Trucking Co. v. Dammann*, 208 Wis. 116, 241 N. W. 625, 630:

"Such questions as to the validity of the statute because of minor details can be given more critical and satisfactory

consideration when they are presented because of the particular facts involved. when an actual controversy arises in relation to them, instead of attempting to anticipate their solution upon merely some hypothesis. *State ex rel. Buell v. Frear,* 146 Wis. 291, 307, 131 N. W. 832, 34 L. R. A. N. s. 480; *Borgnis v. Falk Co.* 147 Wis. 327, at p. 364, 133 N. W. 209; *Income Tax Cases,* 148 Wis. 456, 503, 517, 134 N. W. 673, 135 N. W. 164. Courts should not permit equity jurisdiction to be used in a suit of this sort to determine whether an act is fatally uncertain in some mere matter of detail. *Wadhams Oil Co. v. Tracy,* 141 Wis. 150, 160, 123 N. W. 785, 18 Ann. Cas. 779."

*By the Court.*—Judgment affirmed.