NEW YORK LIFE INSURANCE COMPANY, Plaintiff, OSCAR OLSON, Intervener, Appellant, v. T. F. BREEN et al., Defendants, PAUL FELCIAI, Intervener, Appellees.

No. 44928.

Helsell, Burnquist & Bradshaw, for appellant.

Maher & Mullen and Breen & Breen, for appellees.

Hale, J.—On the trial of this cause two proceedings were consolidated and tried together in the original real estate foreclosure and decided in one order. The issues in the two actions were: First, petition of Oscar Olson, holder of the sheriff's certificate, asking for sheriff's deed; second, motion of Mollie Breen, who was substituted as defendant in the original action, and Paul Felciai, to whom she had contracted to convey the real estate in question, to determine the amount necessary to redeem from sheriff's sale. In considering these matters we will take them up in the order adopted by the parties to the action.

Prior to 1934 the New York Life Insurance Company was the holder of a real estate mortgage covering the east 20 feet of the west 20½ feet of lot 1, block 49, original town of Fort Dodge, which was owned by T. F. Breen. On November 16th of that year the mortgagee commenced a real estate foreclosure against the above-described property, and on November 24, 1934, the defendant T. F. Breen applied for continuance. This application was resisted and a continuance was granted to March 1, 1935. Later, on April 16, 1935, on the application of the owner, a second order of continuance was made. Under the first continuance W. J. Carter of Fort Dodge was appointed assistant receiver, and under the said continuance he was appointed receiver. In March 1936, the plaintiff filed a petition asking the termination of the continuance, and on the 23d of April, 1936, this continuance was terminated and a decree of foreclosure entered. Foreclosure sale was held on June 1, 1936; the New York Life Insurance Company, as judgment creditor, was purchaser on its bid of $15,390.03, leaving a deficiency judgment in the sum of $841.07. Interest provided for in the

foreclosure decree was 7 per cent. Costs were paid by the insurance company and certificate of sheriff's sale issued to it. Thereafter the New York Life Insurance Company sold and delivered the certificate of sale to Oscar Olson, who appears as intervener in this proceeding. Thereafter T. F. Breen conveyed the property involved, with other property purchased by the National Gypsum Company, to his sister Mollie Breen, who now appears in the proceedings as substituted defendant. During the year of redemption a receiver was appointed to retain possession until the expiration of the year of redemption, but prior to June 1, 1937, an order was entered by the court extending the period of redemption to Mollie Breen to March 1, 1939, under the provisions of S. F. 16 of the Forty-seventh General Assembly. In substance such order provided for the appointment of W. J. Carter as receiver, with provisions for renting and the application of the funds to be derived from such rentals, first, for the payment of taxes and special assessments; second, for the payment of insurance; and third, for maintenance, upkeep, or repairs; and the order directed that the balance or balances should be applied on the deficiency judgment. It further provided as follows:

"If the act which this order is entered be repealed or held invalid by any Court of last resort prior to March 1, 1939, or if the emergency shall cease to exist, then this order shall be terminated."

From this order no appeal was taken.

This was the situation on January 14, 1939, when the intervener Paul Felciai, purchaser from Mollie Breen, paid into the clerk's office the sum of $17,264.04 in order to redeem the property in question. It was claimed by the redemptioner and the other defendants that the amount should be less, but the full amount demanded by the attorneys of plaintiff was paid in, and there was filed on the same day the motion of Paul Felciai and Mollie Breen under section 11792 of the 1935 Code for the purpose of determining the amount necessary to redeem. The motion also states that on December 31, 1938, demand was made upon the receiver to furnish an accounting, but the accounting and payment into the clerk's office was not completed until January 10, 1939.

Three days later, on January 17, 1939, Olson, intervener,

filed a resistance to the foregoing motion, alleging ownership of the sheriff's certificate of sale; actual notice of movants and their attorney; and claiming that all rights of any party to redeem expired on June 1, 1937. He denies the good faith of the motion and the tender of the money; and by amendment filed on January 20, 1939, makes general denial, and alleges demand on the sheriff for deed. He alleges that at no time had Felciai, Mollie Breen, or their attorneys called on him to aid in computing the amount necessary to redeem; that he has authorized no person to compute or negotiate for redemption; denies knowledge of any sale to Felciai; and alleges that the order of extension of time of redemption was made subject to the decision of the supreme court of the state of Iowa; that the moratorium statute, designated as S. F. 15 of the Forty-seventh General Assembly has been held void and that the statute for extension of time of redemption, known as S. F. 16 of the Forty-seventh General Assembly, is unconstitutional and void.

On the same day, January 17, 1939, Olson filed petition of intervention asking for sheriff's deed; alleging demand of sheriff for such deed; that the time for redemption had expired and no redemption had been made.

On January 20, 1939, Mollie Breen and Paul Felciai filed a reply to Olson's resistance, setting out the sale to Felciai for the difference between the redemption money and the purchase price, $22,750, such redemption amount appearing to them to be $16,217.61. The sale was by contract and the closing of the sale was to have been on January 3, 1939, but said Mollie Breen was unable to obtain the abstract. At the same time these movants requested of the plaintiff's and intervener's attorneys that the receiver report and the same request was made of the receiver, and that he pay over such money as should be on hand, and on the 10th of January 1939, the receiver paid the money into the clerk's office. The deed from Mollie Breen to Felciai was made January 3, 1939, and the amount computed by the insurance company and Olson was paid into the clerk's office as stated. The movants deny that the order of extension in the case was ever appealed from and state that on January 14, 1939, such order was in good standing, and still is.

The difference in the amounts computed by the different parties is largely predicated upon taxes which the insurance

company claims to have paid and which Felciai and Breen deny; and another difference is in the deficiency judgment. The movants object to the rentals of the property in question as reported by the receiver, and the charges made by the receiver in such receivership.

The intervener Olson, on January 25, 1939, filed what he terms an "answer to reply filed by Mollie Breen and Paul Felciai," in which he makes a general denial, denies the statements as to the abstract; claims that the receiver delivered the money prior to the deposit of the fund for redemption; denies that his attorneys gave the clerk's office any figures on the amount necessary to redeem, but states that Bradshaw, as attorney for the receiver Carter, called attention to certain errors made by Breen & Breen and the deputy clerk: First, in computing interest; second, that the deficiency judgment was, on the motion of Mollie Breen, transferred to additional expenditures made by the plaintiff and that she agreed it was to be paid as a part of the amount necessary to redeem; and third, that the figures were wrong in not taking into account $382.37, with interest, as additional expenditures, all of which was called to the attention of Mollie Breen and Paul Felciai before the deposit was made. In division 2 the intervener claims that the taxes had to be paid by the insurance company in the above sum of $382.37, and such payment was made with the knowledge of Mollie Breen, the amount being, with interest up to January 10, 1939, $449.27; that the said Mollie Breen agreed that the deficiency judgment should be transferred to additional expenditures and paid within the time of redemption, and that it has never been paid; and the said intervener asks the immediate issuance of a sheriff's deed and, without waiving his right to a sheriff's deed, equitable relief including the above sums of $841.07 and $382.37, with interest on each, in the amount necessary to redeem.

All the issues joined in these pleadings were consolidated for trial and tried in the real estate foreclosure action wherein the New York Life Insurance Company was the original plaintiff and Mollie Breen the original defendant.

From the foregoing it will be seen that the two issues here are, as heretofore stated, Olson's petition asking for sheriff's deed, to which defense was interposed that Mollie Breen and Paul Felciai still had the right to redeem, and as to this matter

the petition for the deed was denied by the court. The second branch of the case was, as heretofore stated, the motion of Mollie Breen to determine the amount necessary to redeem, to which the defense was interposed that there was no right of redemption after June 1, 1937; and alternatively, that the defendants cannot in equity be permitted to void their own agreement to liquidate the deficiency judgment. On this branch of the case the court permitted redemption, fixing the amount necessary to redeem at $16,724.58, with interest at 7 per cent from January 14, 1939 to January 31, 1939, the date of the order; further directed $200 in rent collected by the receiver to be turned over to the owner of the real estate; and the clerk was directed to turn over the balance—the difference between the amount necessary to redeem and the amount deposited—to the redemptioner Paul Felciai.

From this order of the court on the two issues the intervener Olson appeals.

Intervener urges in support of his views on the question of the invalidity of the redemption the fact that the supreme court, on January 17, 1939, declared the act relating to the extension of time of redemption invalid and unconstitutional. The court had theretofore, on the 10th day of January, 1939, declared the moratorium statute unconstitutional. The redemption, however, was made on the 14th day of January, 1939, prior to the ruling of this court as to the unconstitutionality of the redemption statute. In support of his views intervener cites 12 C. J., p. 800, secs. 228, 230, 231, 232, and 6 R. C. L., p. 117, sec. 117. Also several cases are cited on his theory that judgments and decrees rendered in the course of judicial proceedings under unconstitutional statutes are void. As a general statement this is true when such judgments and decrees are directly attacked.

One of the cases cited by intervener is Jelke Co. v. Hill, 208 Wis. 650, 242 N. W. 576, at page 581, upholding, in brief, the power of the court to enjoin state officials from enforcing a statute invalid because in contravention of the Constitution.

Intervener also cites Seaborn v. Wingfield, 56 Nev. 260, 48 P. 2d 881, at page 887, which was a direct attack by demurrer in an action for stockholders' liability, and can, of course, be no authority as to judgments.

Grossman v. Hudspeth County, etc., 5 Cir., 75 Fed. 2d 152, also cited, was a direct attack in an action for tax sale.

The case of Norton v. Shelby County, 118 U. S. 425, 6 S. Ct. 1121, 30 L. Ed. 178, on examination, does not support the point in issue.

Nor does Carr v. District Court, 147 Iowa 663, 126 N. W. 791, Ann. Cas. 1913D, 378, bear out the intervener's contention. The substance of this case is that where public officials acted under an unconstitutional law it would require a very strong case to justify their punishment for contempt.

The question is whether or not a judgment or decree by a court of competent jurisdiction, based on an unconstitutional statute, is void or merely voidable. It is the holding of some courts that such a decree is void from its inception, but we believe the general holding is to the contrary—that the rule recognized in most of the jurisdictions is to the effect that a judgment or decree on the merits, based on an unconstitutional statute, is not void, but merely voidable, and remains effective until regularly set aside or reversed.

The case of Stromberg, Allen & Co. v. Hill, 170 Ill. App. 323, cited by intervener, is to the effect that on direct attack a decree based upon an unconstitutional statute could be reversed, which, of course, cannot be denied.

Such has been the holding in a large number of cases, from very early times.

Buckmaster v. Jackson ex dem. Carlin, 3 Scammon's Reports, 104, decided by the supreme court of Illinois in 1841, involved an act of the legislature which had subsequently been declared unconstitutional. In this case the holding of the court was that the judgment was valid until reversed and that the title of the purchaser under such judgment could not be impeached in an action of ejectment upon the ground that the act creating a bank was unconstitutional. The rule laid down in that case is:

"Upon what principle a judgment, rendered by a court of competent jurisdiction, as the circuit court of Madison county confessedly is, having jurisdiction of the person, and over the subject matter, on which it adjudicated, and the party against whom its judgment is rendered having had actual or construc-

tive notice of the pendency of the action, can be declared a nullity, is not perceived.

"The rule, as it is understood in reference to valid and void judgments, is, whether, or not, the tribunal before whom the parties are called, has jurisdiction of the persons and the subject matter of the controversy; and whether, or not, the party against whom judgment is rendered, has had either actual or constructive notice of the pendency of the suit. If the jurisdiction attaches, and notice is given, no errors or irregularities, which may have been committed during the progress of the cause, can render the judgment void."

The court then goes on to say that errors or irregularities are to be corrected by direct proceedings in an appellate court.

The case of Webster v. Reid, one of the earlier cases in this state, Morris, page 467 (page 615 of the second edition) was afterwards reversed by the supreme court, but on other grounds, and the holding in that case, which has subsequently been cited in a number of cases, was to the effect that judgments rendered under an unconstitutional law are not nullities. See 36 A. L. R. 492, note.

The Buckmaster case, supra, was followed by various Illinois cases, and the rule was affirmed that, where the supreme court had declared the act creating a bank unconstitutional, proceedings under such act of the legislature were valid until reversed.

To the same effect is Cassel v. Scott, 17 Ind. 514, where the law was declared unconstitutional, but the court said that it does not follow that the judgment is a nullity, and, even though deemed erroneous, it is not void and must be held operative until reversed by a court of error.

This question has recently been discussed in the case of Woods Bros. Constr. Co. v. Yankton County, 8 Cir., 1931, 54 Fed. 2d 304, 81 A. L. R. 300, in which the federal court set aside a judgment after the term on the ground that such judgment was a nullity, the law authorizing the contract on which it was based having been subsequently declared unconstitutional. On appeal to the circuit court of appeals the order of the federal court was reversed. The theory of the trial court in holding that it had the right after the term had expired to vacate a judgment was that the judgment was a nullity by virtue of the decision of the state supreme court, 55 S. D. 161, 225 N. W.

228, holding the statute unconstitutional, but the appellate court held that at the time of the decision the state court had not passed upon the constitutionality of the statute, and the trial court had the power at that time to pass upon the validity of the statute and the judgment should not be vacated after the expiration of the term because of the court's subsequent decision holding the statute unconstitutional. The appellate court stated that the judgment, being a valid and final one so far as the district court was concerned, the remedy, if any, was by appeal and not by an attempt to set aside the judgment after the term had expired.

In Chicot County Drainage Dist. v. Baxter State Bank, 8 Cir., 1939, 103 Fed. 2d 847, 849, reference is made to the Woods case, supra, and the statement is made that the ruling in the latter case is not in conflict therewith. This decision is based upon the theory that the authority of the bankruptcy court was dependent upon and derived from the statute which was declared by the supreme court to be unconstitutional and that the court was without jurisdiction. The question in the second case was a jurisdictional one, such jurisdiction being conferred by the act later held unconstitutional. In the case at bar, however, there is no question of jurisdiction. Even under the issues of the Chicot County case, a dissenting opinion by Woodrough, circuit judge, sets out what we believe to be the true rule:

"But it seems to me that our duly constituted courts, sitting in the various districts and circuits throughout the nation, functioning in equity, law or bankruptcy, remained clothed with judicial power, including the power to pass on the constitutionality of the law and that their solemn judgments in all cases, including bankruptcy cases, ought to be given full faith and credit unless appealed from and reversed. The amendment to the Bankruptcy Act affected very large property rights. I think it ought not to be held that there was a hiatus of governmental power in respect to them, or that the Supreme Court decision annulling the amendment operated retroactively to render void the final unappealed from judgments of all the courts that had passed on the amendment and adjudicated rights between litigants in respect to it. It ought to be held that government by law is continuous at least in the courts of the nation."

The question as to whether such judgment is void or voidable has not been directly passed upon by this court. The holding in the case of Security Sav. Bk. v. Connell, 198 Iowa 564, 200 N. W. 8, 36 A. L. R. 486, was not directly on the point in issue. This was an appeal from the judgment of the district court sustaining a demurrer to and dismissing the petition filed asking reduction of the assessment of a bank's capital stock, the plaintiff claiming that, having once been given the right to deduct the value of United States securities from the capital stock in the assessment of January 1, 1920, it was entitled to such reduction in subsequent years. The holding of the court was to the effect that a judgment establishing such tax exemption, under a statute subsequently held to be unconstitutional, was not res adjudicata in subsequent years; but the case nowhere holds that the former judgment was invalid or that former decrees were void. The question was as to the binding effect of such decree on subsequent assessments. The court properly declared that such future assessments were not subject to nor controlled by the former decree. In the note to this case, in 36 A. L. R., at page 492, are cited Buckmaster v. Jackson ex dem. Carlin, supra; Cassel v. Scott, supra; Webster v. Reid, supra; Philadelphia v. Ridge Ave. R. Co., 142 Pa. 484, 21 A. 982, 24 Am. St. Rep. 512; Arnold v. Booth, 14 Wis. 180.

Arnold v. Booth, supra, holds that an action to recover a penalty for violation of an act of Congress commonly known as the Fugitive Slave Law, 9 Stat. 462, was a question going to the existence of the cause of action and not to the jurisdiction of the court. The court held that the judgment of the court, however erroneous, is binding until reversed.

In the case of Philadelphia v. Ridge Ave. R. Co., supra, we think the language of the court is directly applicable:

"The former judgment is absolutely conclusive upon the parties, as to the cause of action involved in it, although the statute upon which the proceedings were taken was not constitutional; that judgment can only be impeached collaterally for fraud or want of jurisdiction. It is a matter of no consequence now that the act of 1872, upon which judgment was entered for the amount of the tax, was unconstitutional and void; judgment having been entered, and no appeal taken, the subject matter of the issue in that suit is res adjudicata."

So in the case at bar. The district court had the power, when the question was properly presented, to determine the constitutionality of the statute. The question of the constitutionality of the statute was not in issue, nor was it raised by any party, unless, as stated hereafter, the suggestion in the order extending the period of redemption could be said so to raise it. Our holding, under the circumstances, must be that the order, not being void but voidable, would stand unless and until regularly set aside.

But, as stated, some jurisdictions hold to the contrary. To our minds the better view is the majority rule that, unless appealed from and regularly disposed of, a judgment or decree based on a statute afterwards declared to be unconstitutional is not void but merely voidable.

Reference has been made to cases cited in which the attack was direct. In the instant case the order extending the time of redemption was not appealed from and no exception was taken. An order or judgment of the district court must of necessity be unassailable until and unless reversed. To hold otherwise would delay or render uncertain proceedings of the district courts in many cases under statutes until their validity had been determined by the supreme court. There is a presumption of the constitutionality of statutes, and judgments of courts having jurisdiction of the parties and the subject matter remain a verity until directly reversed, or declared otherwise by the process of appeal. See 16 C. J. S., Constitutional Law, 251, sec. 99, and cases cited.

Judgments and decrees of a county court directing proceeds of certain estates to be distributed to orphan asylums, under a statute to that effect later held unconstitutional, are res adjudicata as to the state where judgments and decrees were not appealed from. In re Trustees of Milwaukee County Orphans' Board, 218 Wis. 518, 261 N. W. 676, citing Estate of Bulewicz, 212 Wis. 426, 249 N. W. 534; Golden v. Green Bay Met. S. Dist., 210 Wis. 193, 246 N. W. 505. It has also been held by the same court that the right to have such judgments set aside may be waived by voluntary action on the part of the defendant. We do not think that the order of which complaint is now made at this late date can be reached by anything in the nature of an indirect or direct attack. It is in the nature of

a judgment not appealed from. See 34 C. J. 511, sec. 815, and cases cited.

■ So far as the record in this case shows, the only suggestion of unconstitutionality in the hearing before the district court on the application for extension of the period of redemption was that suggested by the last paragraph of the court's order granting such extension. It does not appear that objection was made on the ground of unconstitutionality, and the record clearly shows that no exception was taken, and that no appeal was taken from the order. So far as the case is concerned, the order of the district court is the law of the case. We think that an attack now is of no avail.

The only time that the question of constitutionality was raised or presented was after the redemption and the objections thereto. But this was too late. Intervener having never appealed from the order of extension and never having urged objection or excepted to the ruling of the court extending the time of redemption, the constitutionality of the statute authorizing the extension cannot first be raised in this court. See Hass v. Leverton, 128 Iowa 79, 102 N. W. 811, 5 Ann. Cas. 974; Shugart v. Maytag, 188 Iowa 916, 924, 176 N. W. 886. See also Lincoln v. Moore, 196 Iowa 152, 194 N. W. 299; Peverill v. Board of Supervisors, 201 Iowa 1050, 205 N. W. 543; Terrell v. Ringgold County Mutual Tel. Co. (1938), 225 Iowa 994, 282 N. W. 702.

In the case of State ex rel. Anti-Saloon League v. Ross, 186 Iowa 802, 803, 173 N. W. 66, 67, the court refused to consider the question of constitutionality, saying:

"Certain constitutional questions as to the power to impose the $300 tax are argued, but no such question was pleaded in the district court, and so far as the record shows, such questions were not presented to nor passed upon by the trial judge."

To the same effect, see Orcutt v. Schlappi, 188 Iowa 378, 174 N. W. 403; Lincoln v. Moore, supra; State v. West, 197 Iowa 789, 198 N. W. 103; Peverill v. Board of Supervisors, supra; 12 A. L. R. 432, note. See, also, Terrell v. Ringgold County Mutual Tel. Co., supra.

■ It will be noted in the order of the court granting the extension that the only reference or suggestion as to the constitutionality of the statute is in this language:

"If the act which this order is entered be repealed or held invalid by any court of last resort prior to March 1, 1939, or if the emergency shall cease to exist, then this order shall be terminated."

If this can be held to assail the order on the ground of unconstitutionality of the act which authorized it—and this is doubtful—it is not sufficient on which to base an appeal to this court. Nothing appears in the record which shows that any objection was made to the constitutionality of the order entered by the district court assailing its right on that ground. But assuming that the order contemplated the invalidity of the statute being judicially determined in the future, and that the constitutionality of the statute was called in question at the time of the entry—all of which is a violent assumption from the language of the order—this would not have been sufficient even to have warranted an appeal at that time. To assail the order on the ground of a violation of any of the provisions of the constitution, such violation must be specifically pointed out. So far as the record shows, nothing in the proceedings tends to point out any such specific violation; and, we may add, neither does it tend in a general way to point out such unconstitutionality. Had the plaintiff in the foreclosure proceeding desired to make objection to the order at the time it was entered, it would have been necessary that it make such specific objection. See Lincoln v. Moore, supra; Peverill v. Board of Supervisors, supra.

In this connection it may be suggested that the acceptance of benefits under an unconstitutional law generally precludes an attack thereon. 11 Am. Jur. 766, sec. 121. The rule is well settled that one who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality in order to avoid its burdens. Certainly such a person will not be allowed to retain his advantage or keep his consideration and then repudiate the act as unconstitutional. Ibid., p. 767, sec. 123. A creditor who elects to avail himself of proceedings under a statute cannot raise an objection that the law does not constitutionally apply to his case. Ibid., p. 768, sec. 123.

In this case the plaintiff in the foreclosure proceeding accepted from the receiver benefits under the action of the court

appointing such receiver and requiring him to dispose of the proceeds, which disposition was to the benefit of the creditor as well as the debtor, and it seems to us that having, without any appeal or any attempt to set aside the order, participated in the benefits derived therefrom, neither plaintiff nor its assignee has any right at this stage of the proceedings to object thereto.

We are also forced to the conclusion that the order itself, which we have held to be valid until revoked, was not automatically disposed of and it did not so provide. It did make the reservation, to which no objection was made, that in the event of invalidity or other conditions arising, the order should be terminated. But we do not see from the language of the order itself that the termination would occur except by some order of court. An order providing for its termination, under the language here used, could not be so terminated simply upon the judgment of the person in whose favor such clause might have been inserted in a decree. This would leave to the party seeking the benefit of the provision the right to declare the original order at an end at such time as, in his judgment, the same should cease. It seems to us that the only authority which could be determinative of the time of termination of the emergency, or the rights to the benefit of the order, would be the court, and that the order itself contemplates, by its language throughout, as well as in this particular clause, that the right to terminate the extension would arise at the time the conditions arose; but the actual determination of that right must of necessity lie in the hands of the court. Under this construction, as we see it, the right under the clause inserted in the extension order has never been exercised.

Both sides having submitted to the order of the court, both sides having derived advantage from the order and accepted the benefits thereof, no exception of any kind having been made thereto, no appeal having been taken therefrom, we cannot at this time see how any objection may be made thereto at this late date. Taking into consideration the actions of the parties and all the circumstances then surrounding them, the subsequent acts and acceptance thereof, our conclusion must be that the order as made and acted upon was not void but voidable, and no complaint can be made at this time as to acts done

following and in pursuance of the order and prior to any action of the court setting the same aside.

The foregoing we think disposes of the principal claim made in the controversy, as to right of redemption.

■ Another objection is made to computation, as to the amount due in redemption, especially as to the item of $988.73, the deficiency judgment in the original foreclosure. There is an additional claim made by the defendant that there was an error in computation in the sum of $393.27. No claim was made by the plaintiff at the beginning of the trial, and the court did allow the sum of $449.27 for taxes. We do not think that this was erroneously omitted by the court, nor do we find anything in the record that so indicates. As to the item of $988.73, we think the language of the court in its findings and order filed on January 31, 1939, gives its reasons, which we think are valid ones for refusing:

"It is claimed, however, that an agreement was entered into some time in 1936 between the plaintiff and the defendant Molly Breen to the effect that this deficiency judgment should be 'converted,' or represented by an 'Affidavit for Redemption,' and thus added to the amount necessary to redeem; and that on April 22nd, 1937, in accordance with this agreement, plaintiff filed the affidavit which appears in this record as Exhibit 'B'. It is to be admitted that this is a very novel method of collecting a deficiency judgment. It could be done only at the price of distorting the records throughout.

"Exhibit 'B' concededly is not true at all; for plaintiff never paid out the items therein stated. The receiver's report simultaneously filed on April 22nd, 1937, purporting to evidence the payment of the judgment and accrued interest out of trust funds in the receiver's hands, likewise is without foundation; for he never made any such payment at all. * * *

"The present owner, Paul Felciai, bought the property subject to the outstanding certificate, for a sum in excess of $22,000; and of course he had a right to rely on the records. The only papers on file calling for his attention are Exhibits 'A' and 'B'. Exhibit 'A' appears to represent a good faith advancement for taxes, and is allowed as above indicated; Exhibit 'B' is concededly not true, and therefore is not chargeable against the redemptioner."

In addition the court allowed a rent installment to the redemptioner.

The findings of the court, and the decree thereunder, denied the intervener's petition for an order directing a sheriff's deed; allows the $449.27 heretofore mentioned, and disallows the item of $988.37; directs the return of the $200 rent payment to the redemptioner; and fixes the value necessary to redeem at $16,724.58.

From an examination of the record, and for the reasons indicated, we agree with the findings and decree of the district court, and the cause is affirmed.—Affirmed.

All JUSTICES concur.